## CADY *v.* CITY OF DETROIT.

1. CONSTITUTIONAL LAW—SOVEREIGN POWER OF THE STATE.

   The sovereign power of the State includes protection of the safety, health, morals, prosperity, comfort, convenience and welfare of the public, or any substantial part of the public.

2. SAME—ORDINANCES PRESUMED CONSTITUTIONAL.

   An ordinance passed by a city government is presumed to be constitutional the same as a statute passed by the legislature, that is, unless the contrary clearly appears; and in case of doubt every possible presumption not clearly inconsistent with the language and subject matter is to be made in favor of the constitutionality of legislation.

3. SAME—CLASSIFICATION MUST BE REASONABLE—INCLUSION OF HARMLESS THINGS WITHIN REGULATION.

   As long as the classification set up in a statute or an ordinance is reasonable and bears some rational relation to the health, morals, safety and general welfare of the community, the fact that harmless things may sometimes be brought within the regulation or prohibition in order to abate or destroy the harmful will not invalidate the legislation.

4. SAME—EQUAL PROTECTION—CONCEIVABLE JUSTIFICATION.

A statutory determination will not be set aside as denial of equal protection of the laws if any state of facts reasonably may be conceived to justify it and it makes no difference that the facts may be disputed or their effect opposed by argument and opinion of serious strength as it is not within the competency of the courts to arbitrate in such a contrariety.

5. SAME—PROPERTY RIGHTS—LEGISLATIVE REGULATION.

Rights of property, like all other social and conventional rights, are subject to such reasonable restraints and regulations established by law as the legislature, under the governing and controlling power vested in it by the Constitution, may think necessary and expedient.

6. SAME—QUESTIONS OF FACT—COURTS—LEGISLATIVE DETERMINATION.

In determining the constitutionality of a statute where the question of what the facts establish is a fairly debatable one, courts accept and carry into effect the opinion of the legislature.

7. SAME—QUESTIONS OF POLICY.

Courts cannot substitute their opinions for that of the legislative body on questions of policy even though the statute under consideration may seem excessive, unsuited to its ostensible end, or based upon conceptions of morality with which the court may disagree, but considerable latitude must be allowed for differences of view as well as for existence of possible peculiar conditions.

8. SAME—APPLICATION OF GUARANTIES.

While the meaning of constitutional guaranties never varies, the scope of their application must expand or contract to meet the new and different conditions which are constantly coming within the field of their operation.

9. SAME—DEVELOPMENT OF POLICE POWER.

With the growth and development of the State the police power necessarily develops, within reasonable bounds, to meet the changing conditions.

10. SAME—USE OF PROPERTY—DUE PROCESS.

That a person may not use his property to the desecration of the community constitutes no unreasonable or permanent hardship and results in no unjust burden.

11. SAME—POLICE POWER—REASONABLENESS OF APPLICATION—REVIEW BY COURTS.

The reasonableness of a legislative determination with reference to the use of property is subject to judicial review, but where a given situation is conceded to present a proper field for the exercise of the police power, the extent of the interference is a matter which lies very greatly in legislative discretion.

12. SAME—POLICE POWER—PROMOTION OF COMMUNITY DEVELOPMENT.

A regulation, reasonably applied, which will promote community development finds support in the police power.

13. SAME—POLICE POWER—COMMUNITY PURPOSES.

The police power extends to attracting a desirable citizenship to a particular locality of a municipality and assuring its permanency, to fostering pride in, and attachment to, the city, to promoting happiness and contentment, to stabilizing the use and value of property, and to promoting the public tranquillity and good order of the city.

14. SAME—TRAILER CAMP ORDINANCE—LIMITATION ON PARKING FOR RESIDENCE PURPOSES.

Provision of city ordinance prohibiting the parking of occupied trailers in trailer camps for more than an accumulated period of 90 days in any one year *held*, not an unconstitutional deprivation of the property of an owner of such a camp in which he has accommodations for 189 automobiles and trailers and an investment of $25,000.

15. SAME—MUNICIPAL CORPORATIONS—PUBLIC WELFARE.

It is within the judgment of the legislative department of the city to determine regulations for the public welfare.

16. SAME—POLICE POWER—SCOPE.

The police power extends to all the great public needs and may be put forth in aid in what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare.

17. SAME—POLICE POWER—MUNICIPAL ORDINANCES—CHANGES.

Ordinances having for their purpose regulated municipal development, the security of home life, the preservation of a favorable environment in which to rear children, the protection of morals and health, the safeguarding of the economic structure upon which the public good depends, the stabilization of the use and

value of property, the attraction of a desirable citizenship and fostering its permanency are within the proper ambit of the police power, and changes in such regulations must be sought through the ballot or the legislative branch.

18. SAME—TRAILER CAMP ORDINANCE—CONSENT OF OWNERS OF NEARBY PROPERTY—DELEGATION OF LEGISLATIVE POWER.

A municipal ordinance prohibiting maintenance of trailer camps unless 65 per cent. of the property owners within 600 feet of such camp consent that a license be granted is not unreasonable nor a delegation of legislative power by the city to such adjacent property owners.

19. SAME—DELEGATION OF LEGISLATIVE POWER—PROHIBITION—WAIVER.

An ordinance which leaves the enactment of the law to individuals would be an unconstitutional delegation of legislative power whereas an ordinance or regulation which is prohibitory in character and permits modification of the prohibition with the consent of the persons most affected thereby is generally regarded as being constitutional.

20. LICENSES—MUNICIPAL CORPORATIONS—TRAILER CAMP ORDINANCE—CONSENT OF OWNERS OF NEARBY PROPERTY.

Owner of trailer camp who had acquired vested rights therein prior to enactment of ordinance regulating such places would not be subject to provision of ordinance requiring that 65 per cent. of owners of property within 600 feet consent to its maintenance before a license could be granted.

21. SAME—FEES.

Unless license fees chargeable under an ordinance relative to maintenance of trailer camps are unreasonable, they will be sustained.

22. COSTS—PUBLIC QUESTION—TRAILER CAMP ORDINANCE.

In suit to enjoin enforcement of ordinance regulating maintenance of trailer camps, no costs are allowed, a public question being involved.

WIEST, BUSHNELL and CHANDLER, JJ., dissenting.

Appeal from Wayne; Miller (Guy A.), J. Submitted May 1, 1939. (Docket No. 119, Calendar

No. 40,514.)    Decided July 6, 1939.    Rehearing denied September 6, 1939.    Appeal to Supreme Court of the United States dismissed January 29, 1940, because a substantial Federal question was not involved.

Bill by C. M. Cady and Theodore Cady, doing business under the name of C. M. Cady & Sons, against City of Detroit and others to restrain the enforcement of an ordinance regulating trailer camps, to have said ordinance declared null and void, and for other relief.    From decree rendered, plaintiffs appeal and defendants cross-appeal.    Modified and affirmed.

*Laurence M. Fine,* for plaintiffs.

*Raymond J. Kelly,* Corporation Counsel, and *Nathaniel H. Goldstick,* Assistant Corporation Counsel, for defendants.

MCALLISTER, J.    Plaintiffs, the owners of an automobile trailer camp, filed a bill of complaint to enjoin the city of Detroit and its officers from enforcing an ordinance which requires 65 per cent. of the owners of real estate within 600 feet of plaintiffs' property to consent to a license for the maintenance of such a camp; and which further prohibits the parking of occupied trailers in any such camp or camps for an accumulated period of more than 90 days in any 12-month period.    The trial court held that the provision requiring consent of adjoining property owners was unconstitutional and void, and granted an injunction against enforcement thereof; but adjudged that the above restriction upon parking in such camps was valid, and refused plaintiffs' prayer for relief with regard thereto.    From such decree, plaintiffs and defendant city of Detroit appeal.    Plaintiffs claim the decree deprives them of property rights in violation of constitutional safeguards; and the city

of Detroit contends that the provisions requiring consent of adjoining property owners is valid.

Plaintiffs' property has accommodations for 189 automobiles and trailers. There is a park, bathing beach, recreation building, and service building with toilet, laundry, and sanitary provisions therein; streets and sewers have been installed; garbage disposal is provided for; and water and electricity are furnished. Plaintiffs' investment in the camp amounts to approximately $25,000.

At present, 400 people live at plaintiffs' camp in trailers equipped with oil burning heaters, beds, tables, benches, stoves and refrigerators. Many have become trailer dwellers because of health considerations and on advice of physicians; others have lost their homes during the depression by mortgage foreclosure; and others do so because they can live in comfort on small and diminished incomes which would not permit them to live in equal respectability in houses or apartments. All of the camp inhabitants, as far as the evidence shows in this case, are employed or have means of support. Living conditions in plaintiffs' camp are superior to those in so-called substandard premises in which thousands of citizens in Detroit live because of financial and economic considerations. It is claimed by plaintiffs that the ordinance in question deprives citizens of constitutional rights, in preventing them from permanently living in their trailers; that the provision limiting them to the occupancy of the trailers for a period of not more than 90 days in any one year is an unconstitutional deprivation of plaintiffs' property and rights as an owner of such camp premises inasmuch as their business depends largely on such permanent camp residents.

Justification of the ordinance is predicated upon the so-called police power of government. The sovereign power of the State includes protection of

the safety, health, morals, prosperity, comfort, convenience and welfare of the public, or any substantial part of the public. *Schmidinger* v. *City of Chicago,* 226 U. S. 578 (33 Sup. Ct. 182, Ann. Cas. 1914B, 284); *Bacon* v. *Walker,* 204 U. S. 311 (27 Sup. Ct. 289; *Nebbia* v. *People of State of New York,* 291 U. S. 502 (54 Sup. Ct. 505, 89 A. L. R. 1469); *Barbier* v. *Connolly,* 113 U. S. 27 (5 Sup. Ct. 357); *Lake Shore & M. S. Railway* v. *Ohio,* 173 U. S. 285 (19 Sup. Ct. 465); *Chicago, B. & Q. Railway* v. *People of the State of Illinois, ex rel. Drainage Comm'rs,* 200 U. S. 561 (26 Sup. Ct. 341, 4 Ann. Cas. 1175).

With regard to the presumption of constitutionality, the rule applicable to ordinances of a city government is the same as that applied to statutes passed by the legislature. *Goldstein* v. *City of Hamtramck,* 227 Mich. 263; 43 C. J. p. 569. A statute will be presumed to be constitutional by the courts unless the contrary clearly appears; and in case of doubt every possible presumption not clearly inconsistent with the language and the subject matter is to be made in favor of the constitutionality of legislation. *Scott* v. *Smart's Executors,* 1 Mich. 295; *Sears* v. *Cottrell,* 5 Mich. 251; *Thompson* v. *Auditor General,* 261 Mich. 624. Every reasonable presumption or intendment must be indulged in favor of the validity of an act, and it is only when invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the Constitution that a court will refuse to sustain its validity. A statute is presumed to be constitutional and it will not be declared unconstitutional unless clearly so, or so beyond a reasonable doubt. *Attorney General, ex rel. Barbour,* v. *Lindsay,* 178 Mich. 524; *Bowerman* v. *Sheehan,* 242 Mich. 95 (61 A. L. R. 859).

Defendant city of Detroit contends that the ordinance is a proper exercise of the police power of the municipality. It is claimed that living conditions for

children in trailers are not conducive to their best interests; that they have no privacy or opportunity to visit and play in a home with other children and to meet the needs of their leisure hours in a normal way; that as a general rule such children are obliged to be outside their home most of the time, and that such a life militates against parental supervision of the child; that a social problem is created by crowded quarters, when children are required to live with adults in such close proximity, and that under these circumstances they acquire a precocious knowledge of sex matters which should normally come to them later and more naturally. It is further objected that the common use of toilets and bathing facilities by members of the same sex of different ages creates undesirable situations with potential danger to the morals of the young.

Because of such unstable and impermanent residence, it further is claimed that other problems and difficulties are created for the city; that schools have been overcrowded because of a sudden access of children living in trailer camps situated in the neighboring localities; and that it is impossible to foresee and make proper provision for such transient children.

The city of Detroit further maintains that it is contrary to the best interest of the municipality to have large groups of people continually shifting from one place in the city to another, living in homes for which they pay no real estate taxes, directly or indirectly; that such failure to contribute their just and proper share to the maintenance of city government is an unfair burden upon the rest of the citizens, and such transitory residence without any plan of permanence is contrary to public policy and to the interests of the city. Numerous complaints have also been received concerning trailer camps, other than that of plaintiffs and those appearing in the instant case,

with regard to improper sanitary conditions, disorders, fires, and overcrowded living conditions. It is the contention of the city that while the trailer serves a useful function for outings and vacation periods, it is not a proper permanent home, and that its use for such purpose should be prohibited by restricting such occupancy to a period of 90 days in any one year, such a period having been considered as a reasonable differentiation between a temporary and a permanent dwelling place.

It is urged, however, that the objections of the city apply with varying weight to individual cases—that the school consideration can apply only when there are children, and that in a great majority of instances children do not live in trailers; that objections on grounds of sanitation do not apply to camps such as plaintiffs; that many citizens do not pay real estate taxes directly or indirectly, thousands being on government relief rolls; and it is said that in many cases living in trailers is healthful and economical, and that it promotes health, contentment, happiness and prosperity for many citizens; that they have their own homes, which they otherwise might not have, and that they have more freedom and independence. There is evidence in this case to support such view. If we assume the merit of such contentions, they would not void the ordinance.

"The harmless may sometimes be brought within the regulation or prohibition in order to abate or destroy the harmful. The segregation of industries, commercial pursuits and dwellings to particular districts in a city, when exercised reasonably, may bear a rational relation to the health, morals, safety and general welfare of the community." *City of Aurora* v. *Burns,* 319 Ill. 84, 94 (149 N. E. 784).

"Here, however, the exclusion is in general terms of all industrial establishments, and it may thereby

happen that not only offensive or dangerous industries will be excluded, but those which are neither offensive nor dangerous will share the same fate. But this is no more than happens in respect of many practice-forbidding laws which this court has upheld although drawn in general terms so as to include individual cases that may turn out to be innocuous in themselves. *Hebe Co.* v. *Shaw,* 248 U. S. 297, 303 (39 Sup. Ct. 125) ; *Pierce Oil Corp.* v. *City of Hope,* 248 U. S. 498, 500 (39 Sup. Ct. 172). The inclusion of a reasonable margin to insure effective enforcement will not put upon a law, otherwise valid, the stamp of invalidity. Such laws may also find their justification in the fact that, in some fields, the bad fades into the good by such insensible degrees that the two are not capable of being readily distinguished and separated in terms of legislation. In the light of these considerations, we are not prepared to say that the end in view was not sufficient to justify the general rule of the ordinance, although some industries of an innocent character might fall within the prescribed class. It cannot be said that the ordinance in this respect 'passes the bounds of reason and assumes the character of a merely arbitrary fiat.' *Purity Extract & Tonic Co.* v. *Lynch,* 226 U. S. 192, 204 (33 Sup. Ct. 44)." *Village of Euclid* v. *Ambler Realty Co.,* 272 U. S. 365 (47 Sup. Ct. 114, 54 A. L. R. 1016).

A statutory determination will not be set aside as denial of equal protection of the laws if any state of facts reasonably may be conceived to justify it. *Metropolitan Casualty Ins. Co.* v. *Brownell,* 294 U. S. 580 (55 Sup. Ct. 538) ; *Naudzius* v. *Lahr,* 253 Mich. 216 (74 A. L. R. 1189, 30 N. C. C. A. 179). It makes no difference that the facts may be disputed or their effect opposed by argument and opinion of serious strength. It is not within the competency of the courts to arbitrate in such a contrariety. *Borden's Farm Products Co., Inc.,* v. *Baldwin,* 293 U. S. 194 (55 Sup. Ct. 187). Rights of property, like all other

social and conventional rights, are subject to such reasonable restraints and regulations established by law as the legislature, under the governing and controlling power vested in it by the Constitution, may think necessary and expedient. *Holden* v. *Hardy,* 169 U. S. 366 (18 Sup. Ct. 383). Where the question of the facts established is a fairly debatable one, courts accept and carry into effect the opinion of the legislature. *Old Dearborn Distributing Co.* v. *Seagram-Distillers Corp.,* 299 U. S. 183 (57 Sup. Ct. 139, 106 A. L. R. 1476). Courts cannot substitute their opinions for that of the legislative body on questions of policy.

"While the courts must exercise a judgment of their own, it by no means is true that every law is void which may seem to the judges who pass upon it excessive, unsuited to its ostensible end, or based upon conceptions of morality with which they disagree. Considerable latitude must be allowed for differences of views as well as for possible peculiar conditions which this court can know but imperfectly, if at all." *Otis* v. *Parker,* 187 U. S. 606 (23 Sup. Ct. 168).

"And it is not required that we should be sure as to the precise reasons for such judgment or that we should certainly know them or be convinced of the wisdom of the legislation." *Rast* v. *Van Deman & Lewis Co.,* 240 U. S. 342 (36 Sup. Ct. 370, L. R. A. 1917A, 421, Ann. Cas. 1917B, 455).

Concerning the claim that the ordinance results in deprivation of property rights, it is necessary to determine the scope of the police power with regard thereto. In *Village of Euclid* v. *Ambler Realty Co., supra,* Mr. Justice Sutherland, speaking for the United States supreme court, in holding a zoning ordinance constitutional, said:

"Until recent years, urban life was comparatively simple; but with the great increase and concentra-

tion of population, problems have developed, and constantly are developing which require, and will continue to require, additional restrictions in respect of the use and occupation of private lands in urban communities. Regulations, the wisdom, necessity and validity of which, as applied to existing conditions, are so apparent that they are now uniformly sustained, a century ago, or even half a century ago, probably would have been rejected as arbitrary and oppressive. * * * And in this there is no inconsistency, for while the meaning of constitutional guaranties never varies, the scope of their application must expand or contract to meet the new and different conditions which are constantly coming within the field of their operation. In a changing world, it is impossible that it should be otherwise. * * *

"The ordinance now under review, and all similar laws and regulations, must find their justification in some aspect of the police power, asserted for the public welfare. The line which in this field separates the legitimate from the illegitimate assumption of power is not capable of precise delimitation. It varies with circumstances and conditions. A regulatory zoning ordinance, which would be clearly valid as applied to the great cities, might be clearly invalid as applied to rural communities. * * *

"The matter of zoning has received much attention at the hands of commissions and experts, and the results of their investigations have been set forth in comprehensive reports. These reports, which bear every evidence of painstaking consideration, concur in the view that the segregation of residential, business, and industrial buildings will make it easier to provide fire apparatus suitable for the character and intensity of the development in each section; *that it will increase the safety and security of home life;* greatly tend to prevent street accidents, especially to children, by reducing the traffic and resulting confusion in residential sections; decrease noise and other conditions which produce or intensify nervous dis-

orders; *preserve a more favorable environment in which to rear children, et cetera.''* (Italics ours.)

In *City of Aurora* v. *Burns, supra,* in sustaining a building zone ordinance, the court said:

"The constantly increasing density of our urban populations, the multiplying forms of industry and the growing complexity of our civilization make it necessary for the State, either directly or through some public agency by its sanction, to limit individual activities to a greater extent than formerly. With the growth and development of the State the police power necessarily develops, within reasonable bounds, to meet the changing conditions. * * *

"The exclusion of places of business from residential districts is not a declaration that such places are nuisances or that they are to be suppressed as such, but it is a part of the general plan by which the city's territory is allotted to different uses in order to prevent, or at least to reduce, *the congestion, disorder and dangers which often inhere in unregulated municipal development.''* (Italics ours.)

In *Home Building & Loan Ass'n* v. *Blaisdell,* 290 U. S. 398 (54 Sup. Ct. 231, 88 A. L. R. 1481), Chief Justice Hughes, in speaking for the United States supreme court, said:

"It is manifest from this review of our decisions that there has been a growing appreciation of public needs and of the necessity of finding ground for a rational compromise between individual rights and public welfare. The settlement and consequent contraction of the public domain, the pressure of a constantly increasing density of population, the interrelation of the activities of our people and the complexity of our economic interests, have inevitably led to an increased use of the organization of society in order to protect the very bases of individual opportunity. Where, in earlier days, it was thought that only the concerns of individuals or of classes were

involved, and that those of the State itself were touched only remotely, it has later been found that the fundamental interests of the State are directly affected; and that the question is no longer merely that of one party to a contract as against another, *but of the use of reasonable means to safeguard the economic structure upon which the good of all depends.*" (Italics ours.)

In *State, ex rel. Carter,* v. *Harper,* 182 Wis. 148 (196 N. W. 451, 33 A. L. R. 269), in holding a zoning ordinance constitutional, the court said:

"It cannot be denied that a city systematically developed offers greater attractiveness to the home seeker than a city that is developed in a haphazard way. The one compares to the other about as a well-ordered department store compares to a junk shop. If such regulations stabilize the value of property, promote the permanency of desirable home surroundings, and if they add to the happiness and comfort of the citizens, they thereby promote the general welfare. * * *

"The benefits to be derived by cities adopting such regulations may be summarized as follows: They attract a desirable and assure a permanent citizenship; they foster pride in and attachment to the city; they promote happiness and contentment; they stabilize the use and value of property and promote the peace, tranquillity, and good order of the city. We do not hesitate to say that the attainment of these objects affords a legitimate field for the exercise of police power. He who owns property in such a district is not deprived of its use by such regulation. He may use it for the purposes to which the section in which it is located is dedicated. That he shall not be permitted to use it to the desecration of the community constitutes no unreasonable or permanent hardship and results in no unjust burden. * * *

"The reasonableness of this feature of the ordinance, as well as its main purpose, is subject to judi-

cial review. Where, however, a given situation is conceded to present a proper field for the exercise of the police power, the extent of the interference is a matter which lies very greatly in legislative discretion.''

Regulation reasonably applied which will promote community development finds support in the police power. *State* v. *Kievman,* 116 Conn. 458 (165 Atl. 601, 88 A. L. R. 962).

It is stated in 11 Am. Jur. p. 1038:

''As in other applications of the police power, the difficulty concerning regulations relating to real property is in attempting to draw the line between constitutional regulation and unconstitutional invasion. The tendency is to uphold such legislation as valid regulation, for, under the modern view, the police power extends to attracting a desirable citizenship to a particular locality of a municipality and assuring its permanency, to fostering pride in, and attachment to, the city, to promoting happiness and contentment, to stabilizing the use and value of property, and to promoting the public tranquillity and good order of the city. Present-day conceptions of the extent of the public interest, particularly in relation to the public welfare, are very broad; hence, many restrictions on the uses to which real property may be put, many limitations on the type of structures which may be erected on premises in certain localities, in many groupings in definite localities of the enterprises which may be carried on on real property are now sustained as valid exercises of the police power which a few years ago in most jurisdictions were regarded as invalidly invading the constitutional rights of the property owner.''

With regard to the section of the ordinance prohibiting the parking of occupied trailers in trailer camps for more than an accumulated period of 90 days in any one year, we are of opinion that such a

provision is not unconstitutional. It is within the judgment of the legislative department of the city to determine regulations for the public welfare.

"It may be said in a general way that the police power extends to all the great public needs. * * * It may be put forth in aid in what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare." *Noble State Bank* v. *Haskell*, 219 U. S. 104 (31 Sup. Ct. 186, 32 L. R. A. [N. S.] 1062, Ann. Cas. 1912A, 487).

Ordinances having for their purpose regulated municipal development, the security of home life, the preservation of a favorable environment in which to rear children, the protection of morals and health, the safeguarding of the economic structure upon which the public good depends, the stabilization of the use and value of property, the attraction of a desirable citizenship and fostering its permanency are within the proper ambit of the police power. Changes in such regulations must be sought through the ballot or the legislative branch.

Regarding the complaint that the requirement of consent of 65 per cent. of property owners within 600 feet of such camp must be secured before a license can be granted is unreasonable, we are constrained to hold that such conditions are valid and do not result in the delegation of a legislative power by the city to such adjacent property owners. In *Thomas Cusack Co.* v. *City of Chicago*, 242 U. S. 526 (37 Sup. Ct. 190, L. R. A. 1918A, 136, Ann. Cas. 1917C, 594), where an ordinance prohibited the erection of billboards in certain blocks, but permitted the prohibition to be modified with consent of adjacent property owners, it was held that such an ordinance was not a delegation of legislative power but a familiar provision affecting the enforcement of laws and ordinances.

"A distinction is made between ordinances or regulations which leave the enactment of the law to individuals and ordinances or regulations prohibitory in character but which permit the prohibition to be modified with the consent of the persons who are to be most affected by such modification." 43 C. J. p. 246.

If such consent is used for no greater purpose than to waive a restriction which the legislative authority itself has created and in which creation it has made provision for waiver, such consent is generally regarded as being within constitutional limitations. *City of East Lansing* v. *Smith,* 277 Mich. 495. If plaintiffs had not acquired vested rights prior to the enactment of such provision of the ordinance, they would be subject to the restriction in question. See *City of Lansing* v. *Dawley,* 247 Mich. 394.

Objection to the amount of the license fees provided by ordinance was abandoned on the trial. Where it does not appear that such fees are unreasonable, they will be sustained. The case is remanded to the trial court for entry of a modified decree in accordance with the foregoing determination. No costs allowed, as a public question is involved.

BUTZEL, C. J., and SHARPE, POTTER, and NORTH, JJ., concurred with McALLISTER, J.

WIEST, J. (*dissenting*). Law, legislative or municipal, cannot leave it to one's neighbors to prohibit legitimate use of property.

Under this ordinance all of the police power protection is left to the will of a percentage of neighboring property owners. Strike that out and the ordinance is wholly inoperative. The evil, if one calling for exercise of the police power, should be met head on and not by delegation to neighbors. If 65 per cent. of owners of property within 600 feet consent

to a license then all reason for the ordinance vanishes. This is not a case of prohibition but of delegation of power to individuals.

The decree should be affirmed, with costs.

BUSHNELL and CHANDLER, JJ., concurred with WIEST, J.