CITY OF ANN ARBOR, MICH., a Municipal Corporation, Appellant,

v.

NORTHWEST PARK CONSTRUCTION CORP., a Maryland Corporation, Appellee.

No. 14034.

United States Court of Appeals Sixth Circuit.

June 21, 1960.

Jacob F. Fahrner, Jr., Ann Arbor, Mich., and Charles S. Rhyne, Washington, D. C. (Rhyne & Rhyne, Washington, D. C., Stanley E. Beattie, Detroit, Mich., on the brief), for appellant.

Roscoe O. Bonisteel, Jr., Ann Arbor, Mich. (Roscoe O. Bonisteel and Clan Crawford, Jr., Ann Arbor, Mich., on the brief), for appellee.

Before McALLISTER, Chief Judge, and MILLER and WEICK, Circuit Judges.

McALLISTER, Chief Judge.

On August 21, 1958, the City of Ann Arbor, Michigan, by ordinance, re-zoned certain of the property of appellee, Northwest Park Construction Corporation, a Maryland corporation, hereinafter referred to as Northwest Corporation. The re-zoning changed appellee's property, generally speaking, from a commercial classification to a residential classification. Northwest Corporation, which had vast plans for the commercial development of the lands, including the building of a shopping center that would bring customers from a radius of thirty miles, thereafter brought an action in the District Court, attacking the re-zoning ordinance on the ground that the legislative action was an arbitrary, unreasonable, and capricious use of the police power; that the re-zoning was not in accordance with any plan, as required by statute; that it was ineffective and not properly enacted; that it was a

deprivation of the corporation's vested property rights; and that it was confiscatory.

On hearing, the District Court found that the ordinance was null and void because of the unreasonable, arbitrary and capricious action of the City Council of Ann Arbor, which culminated in the enactment of the ordinance. The Court found, however, that the Northwest Corporation had no vested interest in the property re-zoned, merely by virtue of the fact that it had done some work on the property and expended funds in the plans and arrangements for a shopping center and other facilities, in reliance upon the prior zoning of the property for commercial use. The Court further affirmatively held that the City of Ann Arbor had the power to legislate in behalf of the public health, morals and safety, and that the constitutional prohibition against the taking of private property without due compensation was not a limitation upon the general municipal power over private property; and that a general regulation enacted for the conservation of the public health, morals, and safety, which is reasonably adapted to the desired result, is not a taking of property within the meaning of the Constitution, even if it results in a considerable depreciation in the value of property theretofore lawfully acquired and held. From the determination that the ordinance was void, the City of Ann Arbor appealed on the ground that the ordinance was properly enacted; that it was not arbitrary, unreasonable, and capricious; that an ordinance is presumptively valid; that the burden is upon one who attacks it to show it is unreasonable; and that appellee wholly failed to carry the burden and overcome the presumption of validity.

Appellee, Northwest Corporation, although not appealing from the decision of the District Court, maintains that the Court was in error in holding that its vested rights in the property were not impaired by the re-zoning ordinance. It argues, however, that the Court was correct in its holding that the action of the

Common Council of the City of Ann Arbor was unreasonable, arbitrary and capricious, resulting in the enactment of a null and void ordinance.

■ We proceed, then to discuss the first, and, in our view, the most important, consideration in the case: whether the District Court was correct in its holding that Northwest Corporation's vested rights were not impaired by the action of the Common Council in enacting the ordinance re-zoning the company's property from commercial to residential use.

We commence our discussion with a preliminary observation as to the relation between the validity of ordinances and the exercise of the police power. In Village of Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 386, 387, 47 S.Ct. 114, 118, 71 L.Ed. 303, Mr. Justice Sutherland, speaking for the United States Supreme Court, in holding a zoning ordinance constitutional, said:

"Until recent years, urban life was comparatively simple; but, with the great increase and concentration of population, problems have developed, and constantly are developing, which require, and will continue to require, additional restrictions in respect to the use and occupation of private lands in urban communities. Regulations, the wisdom, necessity, and validity of which, as applied to existing conditions, are so apparent that they are now uniformly sustained, a century ago, or even half a century ago, probably would have been rejected as arbitrary and oppressive. * * * And in this there is no inconsistency, for while the meaning of constitutional guaranties never varies, the scope of their application must expand or contract to meet the new and different conditions which are constantly coming within the field of their operation. In a changing world it is impossible that it should be otherwise. * * *

"The ordinance now under review, and all similar laws and regulations, must find their justification in some aspect of the police power, asserted for the public welfare. The line which in this field separates the legitimate from the illegitimate assumption of power is not capable of precise delimitation. It varies with circumstances and conditions. A regulatory zoning ordinance, which would be clearly valid as applied to the great cities, might be clearly invalid as applied to rural communities."

"Justification of the ordinance is predicated upon the so-called police power of government. The sovereign power of the state includes protection of the safety, health, morals, prosperity, comfort, convenience and welfare of the public, or any substantial part of the public. Schmidinger v. City of Chicago, 226 U.S. 578 (33 Sup.Ct. 182, 57 L.Ed. 364, Ann.Cas.1914B, 284); Bacon v. Walker, 204 U.S. 311 (27 Sup.Ct. 289), 51 L.Ed. 499; Nebbia v. People of State of New York, 291 U.S. 502 (54 Sup.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469); Barbier v. Connolly, 113 U.S. 27 (5 Sup. Ct. 357), 28 L.Ed. 923; Lake Shore & M. S. Railway v. Ohio, 173 U.S. 285 (19 Sup.Ct. 465, 43 L.Ed. 702); Chicago, B. & Q. Railway v. People of the State of Illinois ex rel. Drainage Comm'rs, 200 U.S. 561 (26 Sup.Ct. 341, 50 L.Ed. 596, 4 Ann.Cas. 1175). * * *

"Ordinances having for their purpose regulated municipal development, the security of home life, the preservation of a favorable environment in which to rear children, the protection of morals and health, the safeguarding of the economic structure upon which the public good depends, the stabilization of the use and value of property, the attraction of a desirable citizenship and fostering its permanency, are within the proper ambit of the police power. Changes in such regulations must be sought through the ballot or the legislative branch." Cady v. City of Detroit, 289 Mich. 499, 504, 514, 286 N.W. 805, 807.

It is conceded that the Northwest Corporation's actions in making plans for the platting of the property, the use thereof, and the execution of contracts of lease of portions of the property, did not, in themselves, result in the acquiring of vested rights on the part of the company in the prior use thereof as commercial property; and it is our view that, clearly, such platting, planning, or leasing do not give vested rights as a result thereof. As Northwest Corporation says in its brief:

"The law in Michigan, as in a number of other states, does not permit a property owner to avoid compliance with an ordinance rezoning his property merely because he has spent money to develop plans in reliance on the previous zoning. This doctrine sustains Judge Thornton's finding that on the basis of money spent, appellee does not have a vested interest in the commercial zoning of its property. However, where substantial physical work towards development of the property has been done prior to the re-zoning, it has been held that a re-zoning cannot affect the right of the owner to finish his development and use his property for the planned purpose."

Appellee Northwest Corporation, however, insists that it had done such substantial physical work toward the development of the property prior to the re-zoning, that such re-zoning to residential use cannot affect its right to continue and finish its development and use the property for commercial purposes. In proof of its contention, the evidence on behalf of appellee discloses that it removed many trees and stumps from the land in question in preparation for its use as commercial property; that it demolished the foundations and retaining walls of a former greenhouse; that it secured a building permit for a construction shack on the premises, and built such a shack; and that it moved construction equipment onto the property; and that it graded the land. The fore-

going action of the corporation, however, in our opinion, gave it no vested right in the commercial zoning which existed prior to the re-zoning ordinance which subsequently had limited the property to residential use.

■ In City of Lansing v. Dawley, 247 Mich. 394, 225 N.W. 500, it was held that no vested rights can be acquired by an owner of realty in zoned property, until he has obtained a building permit, and in reliance thereon, has done work of a substantial nature toward the construction of a building, even though large expenditures of time and money might otherwise have been made. See also Sandenburgh v. Michigamme Oil Co., 249 Mich. 372, 228 N.W. 707. Zoning is not a contract which forecloses its subsequent amendment. Reichelderfer v. Quinn, 287 U.S. 315, 53 S.Ct. 177, 77 L.Ed. 331. Northwest Corporation had never secured building permits for the proposed shopping center or other constructions and developments. The only building permit it secured was for the construction shack which was built; but the permit for this shack did not carry with it any right to additional permits for other construction. Under the above decisions, the work, which the Corporation did, was not of the substantial nature required to give it a vested right in the property as previously zoned, and its failure to obtain a building permit and to do the work in reliance thereon, left it without a valid claim under the theory that its vested rights had been impaired.

From the foregoing, we are of the opinion that the District Court correctly found that the ordinance re-zoning appellee's property in question from commercial to residential use was not an impairment of Northwest Corporation's vested rights therein.

■ We proceed then to the issue whether the action of the Common Council of the City of Ann Arbor in re-zoning the property from commercial to residential use was arbitrary, unreasonable, and capricious and resulted in a void ordinance.

The District Court did not hold that the re-zoning ordinance itself was unreasonable, capricious and arbitrary. It affirmatively stated that it did not wish to be understood as labeling the re-zoning ordinance unreasonable. What the District Court held was that "the procedures leading up to the enaction of the ordinance were such as to require them to be characterized as unreasonable, arbitrary and capricious." However, appellee contends that the re-zoning ordinance, itself, was arbitrary, capricious, and unreasonable, and that the Court's findings of fact and conclusions of law reveal that its decision was based on findings that the procedures used to enact the ordinance did not afford appellee due process of law, and were, therefore, illegal.

In advancing its contention that the action resulting in enactment of the ordinance was unlawful, appellee corporation contends that the unusual haste and non-observance of the usual and regular procedures by the Council and Planning Commission negatived the opportunity for deliberation that would produce action of a reasonable, non-capricious, and non-arbitrary character; that instances of such misconduct are seen in the fact that the Planning Commission failed to notify appellee of a hearing on August 12, 1958, when the re-zoning of its property was under consideration; that the Planning Commission and the Council failed, in August 1958, to consult with experienced land developers of highly desirable residential property, contiguous to the property in controversy; that the Planning Commission and Council ignored a master plan, prepared by the Planning Commission in 1953; that the Planning Commission advanced its hearing on the question of re-zoning the property without any expressed reason, and before *formal* request for Planning Commission action had been received by the Commission; that the Common Council indulged in unusual procedures in requesting production of a site plan for the property in question; that the Common Council, on August 4, 1958, called a *spe-*

*cial* meeting for August 21, 1958, for the purpose of changing the ordinance, rather than giving this matter attention at its next regular meeting in September, 1958, while, at the same time it set for hearing, on the latter date, another zoning matter which it discussed on August 4, 1958; that the setting of the matter of changing the ordinance for second reading at a special meeting on August 21, 1958, rather than at the next regular meeting in September, 1958, was for the obvious purpose of accommodating the "yes" vote of Mayor Eldersveld, whereas the "no" vote of Councilman Joiner, together with his presence and an opportunity for him to be heard on the subject, were, thereby, avoided by the Council; that the Council ignored the 30-day Charter provision for a report from the Planning Commission, for no apparent reason; that the Common Council failed to seek a legal opinion on the waiver of the 30-day Charter provision, at a time when an assistant city attorney was present at a discussion before the Council on the waiver, and readily available for such opinion; that the Common Council ignored the report of the newly-elected Chairman of the Planning Commission advising the Council of certain irregularities in the handling of the matter by the Commission; and that the Common Council failed to await a report from the City Administrator of his review of the matter of re-zoning of the property in controversy, and of the solution of the traffic problems in the event that a shopping center would be constructed on the property, after having solicited such a review by the City Administrator.

With regard to the claim that the procedures of the Common Council of the City of Ann Arbor, in enacting the ordinance in question, were unreasonable, arbitrary and capricious, it is necessary to review the opportunity of the public and interested parties to be heard, and the nature of the consideration given to the problem, as well as the action taken by the Common Council and the Planning Commission.

It appears that the zoning action here under attack was the third ordinance considered by both the Common Council and the Planning Commission during 1957 and 1958 with respect to a re-zoning of appellee Northwest Corporation's land. In 1956, appellee sought commercial re-zoning of a certain portion of its land. A citizens' petition to restore certain residential use to another portion of appellee's land was, subsequently, before the Planning Commission and the Common Council during the spring of 1957. A majority of the Council twice voted to adopt this latter ordinance but, on October 7, 1957, it failed of passage upon receiving 7 votes rather than 9 to make the necessary three-fourths majority. In June, 1958, a second proposed ordinance was introduced in the Council which would have provided certain types of residential zoning in various portions of appellee's land. This ordinance was passed on a first reading, and referred to the Planning Commission, but in the course of deliberations of the Planning Commission, a new zoning solution was proposed. Thereafter, on August 4, 1958, the Common Council met, held a public meeting on the new proposed re-zoning, and passed, on first reading, the ordinance which became the final re-zoning ordinance enacted on August 21, 1958, here in controversy.

During the consideration of the three various re-zoning ordinances above mentioned, four public hearings were held by the City Council. The Vice President of the Northwest Corporation had two or three conferences with the Planning Commission in regard to the corporation's zoning plans. He had also attended many Council meetings in regard to the re-zoning of the corporation's property, and had been asked by Council members to describe various features of his plan to them.

In addition to the Vice President of appellee corporation, there appeared before the Planning Commission, in June, 1958, the attorney for the corporation, its architect, and a representative of Sears-Roebuck, the company that was to

undertake the shopping center. The Vice President and his attorney had also spoken on the various re-zoning plans at various public hearings before the Council. The Chairman of the Planning Commission and one of its members, as well as the Mayor, testified, in effect, that both the Council and the Commission had spent a great deal of time on the re-zoning ordinance and had developed everything that could be developed in terms of information. A member of the Planning Commission stated that it had worked on the re-zoning for eleven months, and that he had heard so much evidence on the subject, over so long a time, that he considered that no additional evidence—of which none has ever appeared in the offing—could change his mind; and it appears that the whole re-zoning subject had been debated and discussed by the Council for months. In brief, the evidence discloses that repeated and almost continuous deliberation was devoted to the subject of different plans of re-zoning appellee's land over an extended period of time.

■ In our opinion, the most important claim of unlawful procedure, advanced by appellee, is that the re-zoning ordinance was enacted in violation of a Charter provision of the City of Ann Arbor which reads: "The Council shall not determine or alter zoning boundaries, or oppose or amend zoning regulations until thirty days after a report of such changes or amendments has been requested from the Planning Commission by the Council."

Appellee submits that the Council was prohibited by the above Charter provision from enacting the ordinance in question until thirty days had elapsed after it had requested a report from the Planning Commission, and that, in this case, the Council enacted the ordinance only seventeen days after it had requested a report from the Commission.

Was the action of the Common Council in enacting the re-zoning ordinance within thirty days from the time it had requested the report of the Planning Commission, a violation of the Charter resulting in an invalid ordinance? In considering this question, we review the facts on this aspect of the case. It appears that on August 4, 1958, after a public hearing, the Council acted upon the re-zoning ordinance here in question, and, by a vote of 9–2, passed it on its first reading. At the same time, the Council referred the matter to the Planning Commission for a report. According to the evidence, it is the practice of the Council to select one of its members to serve on the Planning Commission, in order to transmit, to and from the Commission and Council, matters that are of interest to both. At the time in question, Mrs. Florence Crane was the member of the Council so selected. She was present at the Council meeting on August 4, as was also the Chairman of the Planning Commission who spoke at the Council meeting. Mr. Coston and Mr. Carpenter, also members of the Planning Commission, were present at this Council meeting.

On August 12, 1958, the Planning Commission met and by a vote of 7–0 placed the matter of the proposed re-zoning ordinance on the Commission's agenda. Then, upon motion by Mrs. Crane, seconded by Mr. Coston, the Commission recommended "re-zoning the property in accordance with the proposal presently pending before the Council." The motion was carried by a vote of 6–1. The Planning Commission then prepared a report, signed by six members, recommending the re-zoning in question.

A special meeting of the City Council was called for August 21, 1958. On that date, the report of the Planning Commission which had previously been prepared, was signed and dated, and presented to the City Council. The Council then held a public hearing, and after hearing all interested parties, and after considering protests and objections as to procedure, it passed the re-zoning ordinance by a vote of 9–0.

We are of the opinion that the action of the Common Council in enacting the re-zoning ordinance, within thirty days from the time it had requested a report

from the Planning Commission, was not a violation of the Charter.

The Charter provides that "the Council shall not * * * amend zoning regulations until thirty days after a report on such * * * amendments has been requested from the Planning Commission by the Council." The relevant statute provides that amendments to zoning may be made from time to time, as provided therein, after its procedural due process requirements have been satisfied, and after the proposed amendment has been submitted to a Planning Commission, and its report made thereon. In this case, the Planning Commission had already made its report recommending the proposed re-zoning ordinance, within seventeen days after the Common Council had referred the matter to it for approval.

It appears that one of the main functions—if not the main function—of the Planning Commission is to study proposed zoning, and make reports thereon to the Common Council; that the provision of the Charter here in question was intended to secure to the Planning Commission a reasonable time to perform this function; and that it does not impose upon the Commission a minimum period for consideration of such ordinance. The Michigan statute, in this regard, simply requires a report from the Planning Commission to the Council prior to enactment of a re-zoning ordinance, but does not set a time limit for the filing of such a report. In our opinion, it was the intention of the framers of the Charter provision to place a minimum time limit, prior to which the Council, in the absence of a report, would be prohibited from enacting the ordinance. However, when the request of the Council for a report from the Planning Commission has been satisfied by the submission of such report, the Charter provision, in our view, is not a prohibition against legislative action any time after the submission of the report; for, as contended by the City, nothing could be accomplished by rendering the Council powerless to act for a considerable time after receiving the report simply because the Charter provides that the Council cannot re-zone until thirty days after the request for the report. This provision is for the purpose of giving the Commission thirty days in which to submit a report. If it does not do so within that time, the Council may act. But if the Commission does submit the report prior to such thirty-day period, then the Council is free to act at any time thereafter. It seems to us that the purpose of the provision is to secure a report within a reasonable time after request; and a reasonable time to give the Commission to make the report is specified as thirty days. The object is to get the report, not to postpone action by the Council after receiving the report, and this seems evident from the fact that, even according to appellee's contention, the Council could have acted on the ordinance, on the very day on which it received such report. So construed, the Charter provision conflicts in no way with the statute which permits zoning by the City after receipt of a report from the Planning Commission, but without any specification of time within which such a report must be filed with the City, and without any prohibition of action on the part of the City after receipt of such report. This was the construction given to the statute and ordinance by the Mayor, the Common Council and the Planning Commission in the instant case.

The Mayor testified, regarding the Council's action within thirty days of the time of referring the proposed ordinance to the Commission—but after it had received the Commission's recommendation—and stated that no one had conveyed to him any interpretation of the City's thirty-day regulation, raised herein by appellee, implying anything other than that the purpose of the ordinance was to prevent the Council from taking action too precipitately, without a Planning Commission report, and, secondly, to make it impossible for the Planning Commission to hold up the City Council indefinitely.

It is to be here remarked that there were two public hearings, before the Common Council, on the re-zoning ordinance here in question, one on August 4, 1958, and the other, on August 21, 1958, at which the general public and all interested parties were entitled to appear, express their views, and voice their objections.

"'While not controlling, the practical construction given to doubtful or obscure laws in their administration by public officers and departments with a duty to perform under them is taken note of by the courts as an aiding element to be given weight in construing such laws, and is sometimes deferred to when not in conflict with the indicated spirit and purpose of the Legislature.' * * *

"'Statutes will be construed in the most beneficial way which their language will permit to prevent absurdity, hardship or injustice; to favor public convenience and to oppose all prejudice to public interests.'" Boyer-Campbell Co. v. Fry, 271 Mich. 282, 260 N.W. 165, 170, 98 A.L.R. 827.

A problem, similar to the one in the instant case, was presented to the Court in Brow v. Sherwin-Williams Co., Ohio App., 109 N.E.2d 864, 868, in which the statute provided a 30-day period of time for a Planning Commission to make its report to a City Council with respect to the amendment of a zoning ordinance. In passing upon the issue raised, the Court of Appeals said:

"*Sec. 4366–11* of the General Code of Ohio provides for the amendment of zoning ordinances, 'but *no* such *amendment* or change *shall* become effective unless the ordinance proposing such amendment or change shall first be submitted to the Planning commission, board or officer for approval, disapproval or suggestions and the *planning commission,* board or officer *shall have been allowed a reasonable time, not less than thirty*

*days, for consideration and report'* * * *." (Emphasis added.)

On the claim that there had been a failure of the Council and members of the Planning Commission to comply with this section of the statute, the Court, in the foregoing case, considered the purpose of the 30-day provision and held that it was merely directory:

"In consideration of this statute, we are of the opinion that the provision in respect to *time is not of the essence* * * *. The mere fact that an ordinance directs the doing of a particular thing after a fixed time, does not necessarily mean that such act may not be done before such time, when the *provision relating to time may be considered directory* * * *. We are of the opinion that the conduct of the commission accomplished the substantial purposes of the statute, * * *." (Emphasis added.)

█ As we have heretofore observed, the most important contention, advanced by appellee, with respect to the claimed illegality of procedures in the enactment of the ordinance, relates to the 30-day provision above mentioned. The statute, providing for procedures for zoning by municipalities, does not require the elapse of a specified period between the consideration and report of the Planning Commission and the enactment of the ordinance. It only provides that the ordinance be not enacted until the report of the Planning Commission is received. It does not stall all legislative procedures, after everything sought to be secured by the Charter provision has been attained. Interpreting the Charter provision in the most beneficial way to prevent aimless, futile, and useless delay, and to favor public convenience, we are of the view that the enactment of the ordinance by the Common Council after receiving the report of the Planning Commission was not violative of the Charter provision in question.

█ Altered circumstances and changed conditions may require re-zon-

ing and, in this case, the Planning Commission explicitly recognized the existence of such changes in its recommendation for enactment of the re-zoning ordinance. Changed or changing conditions may call for changed plans, and persons owning property in a particular zone are not possessed of a vested right to that classification if the public interest demands otherwise. In the property re-zoned, there had been a change in the character of the area brought about by its rapid residential development. As an instance, this change had created the need for two new elementary schools, it appearing that the majority of the homes in the area, surrounding the re-zoned property, are single-family dwellings, containing children who attend the two elementary schools and the junior high school in close proximity to the proposed shopping center. This shopping center, if constructed, would, according to expectations, draw customers from a radius of thirty miles, and there is evidence that it would have a severe impact upon the neighboring residential community with respect to traffic, congestion, and danger to young children.

While we have referred to the ordinance in this case as limited to residential use, it is to be said that it also provided, in the residential area, for neighborhood shopping use, in conjunction with multiple dwelling and professional office use. There was proof that traffic hazards made necessary the re-zoning to the proposed residential use above mentioned. In its re-zoning, the City Council was guided by the state statute pertaining to the factors which a municipality must consider therein. The statute directed:

" * * * Such regulations shall be made in accordance with a plan designed to lessen congestion on the public streets, to promote public health, safety and general welfare, and shall be made with reasonable consideration, among other things, to the character of the district, its peculiar suitability for particular uses, the conservation of property values and the general trend and character of building and population development." Mich.Stat.Ann. 5.-2931, Comp.Laws 1948, § 125.581.

As was said in Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 394, 47 S. Ct. 114, 120, 71 L.Ed. 303:

"The matter of zoning has received much attention at the hands of commissions and experts, and the results of their investigations have been set forth in comprehensive reports. These reports, which bear every evidence of painstaking consideration, concur in the view that the segregation of residential, business, and industrial buildings will make it easier to provide fire apparatus suitable for the character and intensity of the development in each section; that it will increase the safety and security of home life, *greatly tend to prevent street accidents, especially to children, by reducing the traffic and resulting confusion in residential sections, decrease noise and other conditions which produce or intensify nervous disorders, preserve a more favorable environment in which to rear children*, et cetera" (Emphasis added.)

Appellee attacks the evidence of several expert witnesses which was submitted to the trial court, on behalf of the City, as proof that the zoning ordinance was not unreasonable, capricious and arbitrary, and it asserts that such "retroactive" evidence, given after the enactment of the ordinance, cannot be used to justify the Council's action in re-zoning prior to hearing such evidence. It was unnecessary to present this particular evidence to the Common Council. It could properly enact the ordinance without such proof; and it appears that the City presented such evidence as proof, for the consideration of the Court, on the question of the reasonableness of the ordinance.

In regard to appellee's claim that, because of the re-zoning ordinance, it suffered confiscation, it appears that

the property as presently zoned for so-called residential use is of the value of $540,000, and that its value prior to re-zoning was $690,000 for so-called commercial use. Appellee, however, purchased the property for $125,000. The increment resulted from the growing and developing city. The re-zoning cannot be held, because of the foregoing, to result in confiscation. Bloomfield Township v. Beardslee, 349 Mich. 296, 84 N.W.2d 537; Brae Burn, Inc. v. City of Bloomfield Hills, 350 Mich. 425, 86 N.W.2d 166. See Hadacheck v. Sebastian, 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 848; Village of Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303.

■ Appellant City of Ann Arbor, fully complied with all relevant statutes and ordinances. The fact that the question of re-zoning was not, at first, on the agenda of the Planning Commission—although afterward it was unanimously voted by the Commission to place the question on its agenda, on the day of its meeting—did not result in arbitrary or unlawful conduct, for it appears that the Commission is not required to have any agenda whatever. There was no need to show a letter of transmittal of the proposed re-zoning ordinance, sent by the City Clerk to the Planning Commission. This was not a requirement of the law, and moreover, all of the members of the Planning Commission knew that the re-zoning ordinance had been referred to them for consideration and report. There was no proof that the members of the Planning Commission were not fully aware of the contents of the ordinance upon which they acted. More than that, there was no evidence that they did not actually have the ordinance before them when they recommended its enactment to the City Council. In answer to the contention that they should have followed a master plan in re-zoning, there is no requirement that a City create and follow a "master plan." Brozowski v. City of Detroit, 351 Mich. 10, 87 N.W.2d 114. A comprehensive plan may be revealed in the end product, that is, the zoning

ordinance itself. Lamb v. City of Monroe, 358 Mich. 136, 99 N.W.2d 566. The lack of a master plan was irrelevant to the validity of the zoning ordinance.

The fact that appellee had not received notice of the Planning Commission's meeting in August did not vitiate the report and recommendation of the Commission to the Council. It was not necessary, as suggested by appellee, for the Commission and Council, in August, 1958, to consult with any land developers of contiguous residential property; and the action of the Planning Commission in advancing its hearing on the question of re-zoning did not entail any requirement that it give any reason therefor. That the Common Council requested a site plan from appellee does not go to the validity of the ordinance; nor does the fact that it called for a special meeting for action on the re-zoning rather than waiting for the next regular session, invalidate its action. Much is made of the calling of the special session of the Council because of the claim that it was done for the purpose of enabling the Mayor to vote in favor of the ordinance, whereas one of the opposing Councilmen would be absent at that time attending a session of the American Bar Association; and it is submitted by appellee that, if the matter had gone over to the regular September session, the Mayor would have been in Europe and the opposing Councilman would have registered his vote against the ordinance, resulting in a vote of 8–1 favoring the ordinance, instead of 9–0—and that the ordinance would thus have failed of passage by a three-fourths vote of the entire Council of 12. It was entirely within the power of the Council to call a special meeting. If it resulted in the accommodation of one rather than another of its members —and, even if its purpose was directed to that end—its action therein could not be held void. Furthermore, in reply to appellee's contention, there was no inhibition against the Council's action, whether or not it had received a report of the assistant city attorney on the matter of the 30-day Charter provision.

We have already held that the Council had the right to act within that period, providing it had, at the time of passing the zoning ordinance, received the report of the Planning Commission. Moreover, although the newly-elected Chairman of the Planning Commission, an eminent legal authority, advised the Council of his views regarding irregularities in the handling of the whole matter by the Common Council, it was not incumbent on it to postpone its action; and it was not necessary to await any report from the City Administrator of his review of the whole controversy, even though the Council had previously solicited such report. All of the foregoing is assigned as evidence of irregular procedures which resulted in invalidity of the re-zoning ordinance.

▪ Although the Common Council and the Planning Commission might have afforded the opportunity to more individuals in positions of responsibility to emphasize their views, the fact that these two official bodies did not see fit to proceed in the manner suggested by certain municipal officials and by the appellee, does not result in arbitrary, capricious and unlawful conduct that vitiates the formal action taken by the Common Council in the enactment of the ordinance. For it is not necessary for the City to show that it heard and considered every view as to the regularity of its procedures, or as to the need or lack of re-zoning; or to prove that the ordinance is valid, and that its action in enacting it was not unreasonable, arbitrary or capricious. The burden in such a case is not upon the City, but upon those who attack the ordinance, to prove its invalidity.

▪ An ordinance comes to the courts clothed with every presumption of validity. Hammond v. Bloomfield Hills, 331 Mich. 551, 50 N.W.2d 155. "Save in the most extreme instances, involving clearly whimsical action, we will not disturb the legislative judgment. * * * A legislative determination within its sphere of government is conclusive upon us * * * [It] is clear beyond question that it lies within the competence of the city * * * to plan its future growth and development * * * [Such] factors as the relative values of competing uses, and the proximity of non-conforming uses, assume their rightful places as matters primarily for legislative concern, unless * * * we have patently a capricious and irrational invasion of property, the merits undebatable by reasonable men, the action indefensible to any save those whose minds have been made incandescent by partisan zeal or pursuit of gain." Brae Burn, Inc. v. City of Bloomfield Hills, 350 Mich. 425, 437, 86 N.W.2d 166, 172.

"With regard to the presumption of constitutionality, the rule applicable to ordinances of a city government is the same as that applied to statutes passed by the legislature. Goldstein v. City of Hamtramck, 227 Mich. 263, 198 N.W. 962; 43 C.J. p. 569. A statute will be presumed to be constitutional by the courts unless the contrary clearly appears; and in case of doubt every possible presumption not clearly inconsistent with the language and the subject matter is to be made in favor of the constitutionality of legislation. Scott v. Smart's Executors, 1 Mich. 295; Sears v. Cottrell, 5 Mich. 251; Thompson v. Auditor General, 261 Mich. 624, 247 N.W. 360. Every reasonable presumption or intendment must be indulged in favor of the validity of an act, and it is only when invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the Constitution, that a court will refuse to sustain its validity. A statute is presumed to be constitutional and it will not be declared unconstitutional unless clearly so, or so beyond a reasonable doubt. Attorney General ex rel. Barbour v. Lindsay, 178 Mich. 524, 145 N.W. 98; Bowerman v. Sheehan, 242 Mich. 95, 219 N.W. 69 (61 A.L.R. 859)." Cady v. City of Detroit, 289 Mich. 499, 505, 286 N.W. 805, 807.

In the light of our conclusions that appellee has not proved a violation of the constitutional, statutory or charter provisions, it would seem that in order to hold the ordinance invalid, it would require the exercise of legislative rather than judicial power. For courts are not equipped or permitted to zone or re-zone property, and, subject only to exceptional circumstances not here present, relief in cases like this must be sought exclusively in the local city hall. Roberts v. City of Three Rivers, 352 Mich. 463, 90 N.W.2d 696.

From the foregoing, it appears that appellee had the burden of proving that the ordinance was illegally enacted. It has not proved that the ordinance under attack was so unreasonable that it could not be defended by reasonable men; that it was not related to the public safety, convenience, health, comfort and welfare of the public, or any substantial part of the public; or that it did not have for its purpose regulated municipal development, the security of home life, or the preservation of a favorable environment in which to rear children; that the ordinance was arbitrary, unreasonable and capricious; or that the procedures of its enactment deprived appellee of its vested interests, in violation of process of law.

Upon an examination of the record and a review of the procedures of the Common Council and the Planning Commission, we are, accordingly, of the view that appellee has not carried the burden of proving that the actions of the Common Council and the Planning Commission were arbitrary, unreasonable and capricious, and resulted in deprivation of its vested rights, or that the procedures of enactment of the ordinance were in violation of the due process clause of the Constitution.

Because of the justified claim that an emergency affecting appellee's property interests existed, and was presented by this appeal, this case was set for argument immediately upon the filing of the briefs; and the hearing of arguments was advanced several months prior to the time when the case would have been heard in due course.

In view of our determination, we have not reached the question of mootness raised by appellant, or the question of abstention by a Federal court from consideration of questions peculiarly involving state law, prior to their determination by a state tribunal. Other matters discussed in the arguments and briefs are unnecessary to decision.

In accordance with the foregoing, the judgment of the District Court is set aside, and the complaint is dismissed.