GEORGE B. SWIFT, Mayor, *et al.*

*v.*

THE PEOPLE *ex rel.* Ferris Wheel Company.

*Filed at Ottawa June 13, 1896.*

1. MUNICIPAL CORPORATIONS—*provision of Chicago charter as to reference of ordinances repealed.* The provision of the Chicago city charter of 1863, that all ordinances, before their passage, shall be referred to a committee and only acted upon at a subsequent meeting, was superseded by the adoption of the general law of 1872, empowering the council to determine its own rules of procedure.

2. SAME—*dram-shops—validity of ordinance requiring consent of legal voters to license.* An ordinance prohibiting the granting of licenses to keep dram-shops within a described portion of a city unless the applicant shall present a petition signed by a majority of the legal voters of that portion of the city, is not invalid as delegating to such voters the power to license dram-shops.

3. SAME—*requiring the consent of legal voters to dram-shop license not a discrimination.* An ordinance requiring an applicant for a liquor license to present a petition of a majority of the legal voters in the portion of the city for which such license is to be issued, is not invalid as permitting arbitrary discrimination between applicants because one may be able to get the petition and another cannot.

*People ex rel. v. Swift,* 60 Ill. App. 395, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. FRANCIS ADAMS, Judge, presiding.

MORAN, KRAUS & MAYER, for appellants.

WILLIAM G. BEALE, Corporation Counsel, (RUBENS & MOTT, and WILSON, MOORE & MCILVAINE, of counsel,) also for appellants:

The requirements for a petition signed by voters as a condition of granting a license have been in force and upheld in many of the States. *State v. Brown,* 19 Fla. 563; *Groesch v. State,* 42 Ind. 547; *Rohrbacher v. Mayor,* 51 Miss. 735; *In re Bickerstaff,* 70 Cal. 35; *State v. Wilcox,* 42 Conn. 364; *Whitten v. Mayor,* 43 Ga. 421.

The ordinance was not void on the ground that it del-egated the powers vested in the city council to the legal voters of the district.   *Swarth* v. *People,* 109 Ill. 621;  *Timm* v. *Harrison,* id. 601;  *People* v. *Cregier,* 138 id. 401;  *People* v. *Hoffman,* 116 id. 587;  *People* v. *Reynolds,* 5 Gilm. 1;  *East St. Louis* v. *Wehrung,* 50 Ill. 28;  *Insurance Co.* v. *Swigert,* 104 id. 653.

The general Incorporation act is not to be treated or considered as an amendment to the charter of any pre-viously existing city or village.   *Chicago Dock Co.* v. *Garrity,* 115 Ill. 165.

The evident purpose of the general Incorporation act was to assimilate the charters of municipal corporations in this State, and place them, when of the same grade, upon a uniform and common footing with respect to their corporate powers and the manner of exercising them. *Board* v. *People ex rel.* 137 Ill. 670.

GREEN, ROBBINS & HONORE, for appellee:

The ordinance is void because it delegates to the legal voters the power to license, which must be exercised by the city council.   *East St. Louis* v. *Wehrung,* 50 Ill. 28;  *Kinmundy* v. *Mahan,* 72 id. 462;  *Chicago* v. *Trotter,* 136 id. 430; *Zanone* v. *Mound City,* 103 id. 553;  *Bibel* v. *People,* 67 id. 172; *McGregor* v. *Lovington,* 48 Ill. App. 211;  *Hickey* v. *Railroad Co.* 6 id. 172;  *East St. Louis* v. *Thomas,* 11 id. 283;  *McCrowell* v. *Bristol,* 89 Va. 652;  *Coffin* v. *Dunstan,* 5 Cush. 269; 1 Dillon on Mun. Corp. sec. 96;  *State* v. *Garibaldi,* 44 La. Ann. 810; *Darling* v. *St. Paul,* 19 Minn. 390;  *Trenton* v. *Clayton,* 50 Mo. App. 535;  *St. Louis* v. *Russell,* 116 Mo. 248.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The questions in this case for decision arose in the circuit court of Cook county on a general demurrer to the petition of the Ferris Wheel Company, as relator, for a writ of *mandamus* to compel appellant Swift, the mayor of the city of Chicago, to issue to the relator a license to

keep a dram-shop. The demurrer being sustained in that court, the petitioner appealed to the Appellate Court, where the judgment of the circuit court was reversed and the cause remanded, with directions to award the writ. The record is now brought to this court by a further appeal by the respondents below.

The petition sets out, by proper averments, a general ordinance of the city of Chicago, which provides that the mayor shall, from time to time, grant licenses for the keeping of dram-shops within the city to any person who shall apply to him in writing, upon the applicant complying with certain requirements therein named, and alleges that it was the only ordinance in force in Chicago on that subject prior to March 8, 1895; that on that day the city council passed another ordinance, to be in force from and after its passage, which prohibits the mayor from granting licenses to keep dram-shops within a described portion of the city, unless the person applying for the same shall comply with the same requirements and conditions named in the general ordinance, "and unless such person so applying shall present to the mayor, with his application, a petition signed by a majority of the legal voters of that portion of the city of Chicago hereinbefore defined, and asking for the granting of such license." The petition also sets up section 4 of chapter 4 of the city charter, passed February 15, 1863, which provides that all ordinances before their passage, unless by unanimous consent, shall be referred to a committee, and only acted upon at a subsequent meeting, on its report, etc.; avers that the same is still in force in the city of Chicago, notwithstanding the subsequent organization of the city under the act of 1872 for the incorporation of cities, and that the ordinance of March 8 was not passed in conformity with its requirements; avers that relator made application to the mayor for a license to keep a dram-shop at a place within the territory described in the last named ordinance, and tendered to him a com-

pliance with all the requirements of the general ordinance, and that he refused to issue the same upon the sole ground that the applicant did not present with its application the petition of legal voters, as required by the ordinance of March 8.    The petition is predicated upon the alleged invalidity of that ordinance because it was not legally passed, because it is a delegation to a majority of the legal voters of a district of a power vested alone in the city council, and because it permits arbitrary discrimination between applicants for license.

The position of counsel for relator on the first of these objections, which, of course, goes to the validity of the ordinance regardless of all others, is, that no ordinance can be legally passed by the city council of the city of Chicago except by conforming to the requirements of said section 4, which was in force on April 23, 1875, when the general law of 1872, providing for the incorporation of cities and villages, was adopted.

Section 4 of chapter 4, above referred to, is as follows: "All ordinances, petitions and communications to the common council shall, unless by unanimous consent, be referred to appropriate committees, and only acted on by the council at a subsequent meeting, on the report of the committee having the same in charge.    Any report of a committee of the council may be deferred to the next regular meeting of the same, and the publication of said report in the corporation newspaper required by request of any two aldermen present."   (Private Laws of 1863, p. 55.)   It is admitted the ordinance in question was not referred to a committee and acted upon at a subsequent meeting of the council, and that such reference was not dispensed with by the unanimous consent of the council, but was passed at the meeting at which it was first presented.   If, therefore, the foregoing section of the charter of 1863 was then in force its passage was illegal; and this counsel for appellants do not deny, but insist that upon the organization of the city under the general law

section 4 ceased to have any application to the enact-
ment of its ordinances.

Section 6 of article 1 of chapter 24 (1 Starr & Curtis,
p. 454,) among other things provides : "From the time
of such organization or change of organization the pro-
visions of this act shall be applicable to such cities and
villages, and all laws in conflict therewith shall no
longer be applicable.   But all laws or parts of laws not
inconsistent with the provisions of this act shall con-
tinue in force and applicable to any such city or village,
the same as if such change of organization had not taken
place."   The question then must be, is the law of 1863, in
regard to the passage of city ordinances, as prescribed
by the foregoing section 4, in conflict or inconsistent with
the provisions of the act of 1872?   If it is, the former law
ceased to be applicable to the city upon its re-organiza-
tion in April, 1875, by the express terms of said section 6.

What are the requirements of the general law on this
subject?   They are found in article 3 of the act, and
nowhere else.   Section 1 of article 3 (1 Starr & Curtis,
p. 457,) provides that the city council shall consist of the
mayor and aldermen.   The following sections, including
the fifth, relate to the number of aldermen, their terms of
office, vacancies and qualifications.   The sixth vests the
power of determining the qualification of its members in
the city council, and by section 7 it is provided "*it shall
determine its own rules of proceeding.*"   Sections 8, 9, 10, 11
and 12 relate to the attendance of members of the city
council, its meetings, election of temporary chairman,
sitting with open doors, and the keeping of a journal of
its proceedings.   Section 13 is as follows: "The yeas
and nays shall be taken upon the passage of all ordi-
nances, and on all propositions to create any liability
against the city, or for the expenditure or appropriation
of its money, and in all other cases at the request of any
member, which shall be entered on the journal of its pro-
ceedings; and the concurrence of a majority of all the

members elected in the city council shall be necessary to the passage of any such ordinance or proposition: *Provided*, it shall require two-thirds of all the aldermen elect to sell any city or school property." Section 14 prohibits the reconsideration of a vote of the council at a special meeting, unless there are present as large a number of the aldermen as were present when such vote was taken. Section 15 requires any report of a committee of the council to be deferred for final action thereon to the next regular meeting after the report is made, upon the request of any two aldermen present. The remaining sections of the article relate to the territorial jurisdiction of the city council and board of trustees, special meetings of the council, approval or veto of ordinances, and passing the same, upon reconsideration, over such veto. Turning to the charter of 1863, we find that section 3 of chapter 4 provides, among other things, that "the council shall determine the rules of its own proceedings." Then follows section 4, as above quoted. Section 7 provides that upon the passage of all ordinances or resolutions appropriating money, imposing taxes or authorizing the borrowing of money, the yeas and nays shall be entered on the record of the common council, and a majority of all the aldermen entitled to seats in the board shall be necessary to their passage.

Is there not a plain conflict—a clear inconsistency—in the two acts? Under the general law the city council shall fix its own rules in the passage of ordinances, subject only to the manner of taking the vote and the requisite majority of its members, as required by section 13, and the right to reconsider the vote and act upon the report of a committee, as limited in sections 14 and 15; whereas under the old charter, when it came to determine the manner in which it would proceed, it was confronted at the outset by the section immediately following the one which gave it the power, which contained the qualification that, unless by unanimous consent, the ordinances

must be first referred to a particular committee, and only acted upon at a subsequent meeting, on such committee's report, which report might be referred to the next meeting and publication required by request of any two aldermen present. ` In other words, under the general law the power of the city council to say when an ordinance shall be put upon its final passage is unqualified, whereas under the act of 1863 it was not. Under the general law it may provide that it shall be finally acted upon at the meeting in which it is introduced, but under the act of 1863 it could not do so. There the power was qualified; here it is general.

The contention on behalf of appellee seems to be, that inasmuch as the rules of procedure prescribed in section 4 of the old charter are not in conflict with any mode of passing ordinances indicated in the general law, therefore those old rules are still in force. But the question is not whether the old rules are in conflict with the general law, but whether the charters of 1863 and 1872 are in conflict, in so far as they authorize the city council to adopt rules for the passage of ordinances. The city council of the city of Chicago, while acting under the charter of 1863, was bound, in fixing its rules of proceeding, to make them conform to the requirements of section 4; but after adopting the general law it could do so or not, as to it seemed best. The object in adopting the act of 1872 was to provide a uniform system of municipal government throughout the State. The law was made applicable to every city in the State, and the legislature must have contemplated that Chicago would, as it did, organize its city government under its provisions. Then, if the inquiry here were one of repeal by implication, it would be pertinent to inquire, why was complete provision for the enactment of ordinances made by article 3 of the general law adopting, in substance, many of the provisions of the special charter of the city of Chicago passed in 1863, and some of its sections literally, and

section 4 omitted entirely, if it was still intended that they could only be legally passed as therein directed? And we think the answer would necessarily be, that by omitting that section a clear intention on the part of the legislature is shown to no longer comply with its provisions.

We assume that it will not be claimed that article 3 does not contain all the provisions requisite to the passage of ordinances, and that it will not therefore be questioned that if the city of Chicago had been organized for the first time in April, 1875, its council could, under the several sections of that article, have lawfully provided that ordinances might be adopted at the first meeting without being referred to a committee. Its power to fix rules of procedure is the same whether the organization is an original one or only a change from a prior charter to the general law, and if, in case of change of organization, there is anything in the former charter which, continued in force, would limit or qualify that power, it is necessarily in conflict and inconsistent with the provisions of the general law. It cannot be said that a law is in conflict or inconsistent with the general law as applied to an original incorporation, but in harmony with it in case of a change of organization.

There is no view upon which the objection that the ordinance in question was not legally adopted can be sustained, and the earnestness with which the point is pressed and the able arguments presented in support of and against it, have, it seems to us, magnified it beyond its real proportions. It is, we think, clear, that when the city of Chicago adopted the act of 1872, by the express language of section 6 of article 1 thereof section 4 of chapter 4 of its old charter became wholly inapplicable to the passage of its ordinances, because in conflict and inconsistent with the act adopted.

The second objection, that the ordinance is void because it delegates to the legal voters of the territory

named the power to license dram-shops, is overruled in the late case of *City of Chicago* v. *Stratton,* (*ante,* p. 494,) in which the question was elaborately argued and fully considered. There are certainly no grounds upon which it can be fairly contended that the law is more favorable to the position of counsel for appellee in this case than that, and this, we understand, is conceded.

The third objection is also practically disposed of by the same decision. If, as contended, this ordinance permits arbitrary discrimination between applicants for license because one may "be able to get the requisite petition and another cannot," the same is true of the one held valid in the *Stratton case.* It is conceded that the city had the lawful right to prohibit the issuing of license to keep a dram-shop in the district named, and we presume it will not be denied that it might limit the number of saloons to be licensed in the district. The contention is, the requirement that the person applying for a license shall present with his application a petition signed by a majority of the legal voters of the district asking that the license be granted, is "a discrimination between different persons possessing the requisite good character." It is not contended that the ordinance on its face makes any such discrimination, or that it is unreasonable if fairly and honestly carried into effect, but the claim is, that through the partiality or corruption of the legal voters of the district one man may be able to get a majority of them to sign his petition, whereas another cannot. It is said: "Thus the rich applicant may secure his license while the poor one may not. Whim, fancy or prejudice may alone control the giving of assent." This is asking the court to hold the ordinance void upon an unwarranted presumption. When the city council creates a local option district, (as this properly is,) it must be presumed that the legal voters therein will petition for license or refuse to do so, as they believe best for the community in the way of regulating the liquor

traffic, and not that they will be governed by motives of personal friendship or ill-feeling towards applicants for license. Certainly there may be good and just motives for signing or refusing to sign a petition, and it will not be presumed that the voters will be actuated by a bad motive rather than a good one. They may be willing that one saloon shall be kept but be opposed to more. Having signed a petition for one it would not be unjust discrimination against the second applicant to refuse to sign his petition. They might be willing to have saloons in a particular part of the district but not in others. Certainly it would not be discrimination to sign the petition of one for the unobjectionable locality and refuse to sign the other. Under this ordinance *unjust* or *arbitrary* discrimination could only result from the misconduct of the legal voters, and for the purpose of destroying the validity of the ordinance it cannot be presumed that they will so act. The contention of counsel, if sustained, would overthrow all local option laws and ordinances enacted for the regulation of the sale of intoxicating liquors. Our statute regulating the granting of license to keep dram-shops by county boards provides that they "may grant license to keep so many dram-shops in their county as they may think the public good requires, upon the application, by petition, of a majority of the legal voters of the town, if the county is under township organization, and if not under township organization, then of a majority of the legal voters of the election precinct or election district where the same is proposed to be located," etc. (1 Starr & Curtis, chap. 43, sec. 3, p. 968.) Section 18 of the Annexation act, approved April 25, 1889, (3 Starr & Curtis, p. 224,) recognizes as valid, ordinances prohibiting the issuing of license to keep dram-shops within certain territory annexed, "except upon petition of a majority of the voters residing within a certain distance of such proposed dram-shop." The validity of this statute and the reasonableness of such ordinances

were very fully considered in the case of *People* v. *Cregier*, 138 Ill. 401, and sustained.

If this ordinance is void on the ground urged, we are unable to see why, for the same reason, all laws and ordinances requiring applicants for license to keep dramshops to comply with certain requirements before the same is granted may not also be held void. One may be able to give the required bond, whereas another cannot; one may be able, through his personal influence, (or even by the use of money, as is said may be done in this case,) to produce satisfactory evidence that he is a person of good character, whereas another of equal good character, through "whim, fancy or prejudice," may be unable to do so. The business of regulating the keeping a dramshop is within the police power of the State, and restrictions which may rightfully be imposed upon it might be obnoxious, as an illegal restraint of trade, when applied to other pursuits. (*Schwuchow* v. *City of Chicago*, 68 Ill. 444.) As we said in *People* v. *Cregier, supra* (p. 419): "The refusal to license deprives no man of any personal or property right, but merely deprives him of a privilege which it is in the discretion of the municipal authorities to grant or withhold." So long as a reasonable regulation is applicable to all alike, it is valid, whether all alike can comply with its conditions or not.

We see no valid objection to this ordinance. Relator failing to show by its petition that it had conformed to the requirements of the ordinance in its application for license, the circuit court properly sustained the demurrer thereto, and the Appellate Court erred in reversing its judgment. The judgment of the Appellate Court is reversed.                    *Judgment reversed.*