NORTOWN THEATRE INCORPORAT-
ED, a body corporate of the State
of Michigan, Petitioner,

v.

Roman GRIBBS, Mayor of the City of De-
troit, et al., Defendants.

VARIETY BOOKS, INCORPORATED,
a Michigan corporation, Petitioner,

v.

Roman GRIBBS, Mayor of the City of
Detroit, et al., Defendants.

AMERICAN MINI THEATRES, INC., a
Michigan corporation, and Pussy Cat
Theatres of Michigan, Inc., a Michigan
corporation, Plaintiffs,

v.

Roman GRIBBS, Mayor of the City of
Detroit, et al., Defendants.

Civ. A. Nos. 39796, 40168 and 40198.

United States District Court,
E. D. Michigan, S. D.

March 22, 1974.

Ernest Goodman, Neal Bush, Detroit, Mich., for American Mini Theatres, Inc. and Pussy Cat Theatres of Mich.

Stephen M. Taylor, Detroit, Mich., for Nortown Theatre, Inc.

Bruce L. Randall, Southfield, Mich., for Variety Books, Inc.

Maureen P. Reilly, Asst. Corp. Counsel, Detroit, Mich., for Roman Gribbs et al.

Before KENNEDY * and GUBOW,** District Judges.

## OPINION

The three above-captioned civil actions present substantially identical challenges to the constitutionality of certain ordinances of the City of Detroit. For purposes of the motions for summary judgment filed in each case by the Defendants, the cases shall be treated together in this opinion.

American Mini Theaters, Inc., and Pussy Cat Theatres of Michigan, Plaintiffs in Civil Action No. 40198, are owners and lessees of a motion picture theatre in the City of Detroit which is devoted to the showing of so-called adult films from which minors are excluded. They have been denied a certificate of occupancy for their theatre by the City of Detroit, by reason of the provision of its Ordinances 742–G and 743–G.

Nortown Theatre, Inc., Plaintiff in Civil Action No. 39796, operates a movie

---

* On American Mini theatres, Inc. and Pussy Cat Theatres of Michigan, Inc. case.

** On Nortown Theatre, Inc. and Variety Books, Inc., cases.

theatre of the same character, also in the City of Detroit. It received a letter on March 9, 1973 from the Corporation Counsel of the City of Detroit advising that the theatre was in violation of provisions of the same Ordinances. The letter warned that, unless the theatre complied with the Ordinances, proceedings to enjoin its operation would be brought.

Variety Books, Inc., Plaintiff in Civil Action No. 40168, operates a retail bookstore in the City of Detroit which is devoted to the sale of so-called "adult books" to adult customers only. It has been denied a change in occupancy permit and has been threatened with legal proceedings to enjoin its operation by the City of Detroit by reason of the provisions of Ordinance 742–G.

The Plaintiffs in each case assert that these city Ordinances violate their Constitutional rights under the First and Fourteenth Amendments of the Federal Constitution because their language is so vague as to deny due process of law; because they fail to establish procedural safeguards; because they invade the area of protection guaranteed by the First Amendment; and because they deprive Plaintiffs of equal protection of the law afforded to other theatre operators and bookstores. Plaintiffs seek declaratory and injunctive relief.

Defendants have moved for summary judgment under Rule 56(b) of the Federal Rules of Civil Procedure on the grounds that Plaintiffs' complaint fails to state a claim against Defendants upon which relief can be granted. An affidavit of Dr. Mel Ravitz, a sociologist at Wayne State University, located in Detroit, and a former member of the Common Council of the City of Detroit, was filed in support of the motions. Much of the information contained in the affidavit was presented to the Corporation Counsel of the City of Detroit for consideration by him and by the Common Council of the City of Detroit at the time the Ordinances were enacted. See Dr. Ravitz' letter of October 17, 1962 attached to Defendants' motions. The affidavit recites some sociological reasons for regulating the locations of businesses of the type operated by Plaintiffs.

Ordinances 742–G and 743–G regulate the location of certain types of businesses in the City of Detroit. These include three so-called adult businesses: adult bookstores, adult motion picture theatres (including adult mini motion picture theatres), and Group D cabarets (a cabaret which features topless dancers, et cetera). They also include establishments for the sale of beer and liquor, hotels, motels, pawnshops, pool or billiard halls, public lodging houses, secondhand stores, shoeshine parlors and taxi dance halls. The present Ordinances amend or replace earlier Ordinances regulating many of these same businesses, but not adult motion picture theatres or adult bookstores. The purpose of the Ordinances, as stated therein, is to ensure that the adverse effects of such businesses, particularly when several are concentrated in a certain area, will not contribute to the blighting or downgrading of surrounding neighborhoods (see prefatory language of Ordinance 742–G Section 66.0000). Before enacting these Ordinances, the Common Council had the expert opinion of Dr. Ravitz, referred to above, on the effect on neighborhoods of concentrations of businesses of the sort regulated. Their effect is deleterious, he stated. They attract the kinds of people who frequent these places and drive away those who do not. This contributes to the decline of a neighborhood. A concentration of such businesses also causes the neighborhood to appear to be declining and this causes a lack of neighborhood pride, resulting in a further decline. Nor is it possible to set aside certain areas where these business uses are to be concentrated, as is done with industrial uses, since the businesses, like other commercial uses, must have some proximity to residential areas and access to a suitable market.

The Ordinances provide two limitations on the location of any businesses

of this character; i.e., the regulated uses. The Ordinances prohibit more than two such uses within 1000 feet of one another; and, in the case of adult theatres and adult bookstores, as well as Class D cabarets, prohibit their location within 500 feet of a residential dwelling or rooming unit. In the case of each of these restrictions, there is a provision for waiver. With respect to the 1000-foot requirement, the Ordinances provide:

Section 66.0101.

The Commission may waive this locational provision for Adult Book Stores, Adult Motion Picture Theaters, Adult Mini Motion Picture Theaters, Group "D" Cabarets, hotels or motels, pawnshops, pool or billiard halls, public lodging houses, second-hand stores, shoeshine parlors, or taxi dance halls if the following findings are made:

a) That the proposed use will not be contrary to the public interest or injurious to nearby properties, and that the spirit and intent of this Ordinance will be observed.

b) That the proposed use will not enlarge or encourage the development of a "skid row" area.

c) That the establishment of an additional regulated use in the area will not be contrary to any program of neighborhood conservation nor will it interfere with any program or urban renewal.

d) That all applicable regulations of this Ordinance will be observed.

The 500 feet from a residential dwelling or rooming unit prohibition may be waived:

. . . if the person applying for the waiver shall file with the City Plan Commission a petition which indicates approval of the proposed regulated use by 51 per cent of the persons owning, residing or doing business within a radius of 500 feet of the location of the proposed use, . . . .

The petitioner is required to attempt to contact all eligible locations within this 500-foot radius, and must maintain a list of all addresses at which no contact was made. The Commissioner of the Department of Buildings and Safety Engineering is authorized to adopt rules governing the procedure for securing petitions. The Ordinances define adult theatres on the basis of the type of films shown therein and adult bookstores on the basis of the type of books in their stock in trade.

Defendants assert that the Ordinances are not vague, that the classifications bear a rational relationship to a State objective and that there is a compelling State interest for enacting them.

■■ The right of the City of Detroit to reasonably regulate and restrict the location of certain uses, whether business, residential or industrial, is clear; e.g., Euclid v. Ambler Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). Plaintiffs concede this general proposition but assert that the Ordinances here, when applied to them, are invalid. Defendants' purpose in enacting them, say Plaintiffs, is not to protect neighborhoods from deleterious business but, rather, is for the purpose of preventing the showing of certain types of films and the sale of certain types of books. It is not for this Court to look behind the stated reasons for enacting the Ordinances. As the United States Supreme Court held in United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1967):

It is a familiar principle of constitutional law that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive. As the Court long ago stated:

"The decisions of this court from the beginning lend no support whatever to the assumption that the judiciary may restrain the exercise of lawful power on the assumption that a wrongful purpose or motive has caused the power to be exerted." McCray v. United States, 195 U. S. 27, 56, 24 S.Ct. 769, 49 L.Ed. 78 (1904).

This fundamental principle of constitutional adjudication was reaffirmed and the many cases were collected by Mr. Justice Brandeis for the Court in Arizona v. California, 283 U.S. 423, 455, 51 S.Ct. 522, 75 L.Ed. 1154 (1931). [391 U.S. at p. 383, 88 S.Ct. at p. 1682]

When, as here, the City has stated a reason for adopting an ordinance which is a subject of legitimate concern, that statement of purpose is not subject to attack.

█ Nor may the Court substitute its judgment for that of the Common Council of the City of Detroit as to the methods adopted to deal with the City's legitimate concern to preserve neighborhoods, so long as there is some rational relationship between the objective of the Ordinance and the methods adopted.

█ It is the claim of Plaintiffs that the provisions of the Ordinances that define adult theatre, adult mini theatre, and adult bookstores are vague. The Ordinances, however, carefully and specifically describe the type of material categorized as "adult". Adult Motion Picture Theaters are defined as those presenting material "distinguished or characterized by an emphasis on matter depicting, describing or relating to 'Specified Sexual Activities' or 'Specified Anatomical Areas'". Adult Book Stores are defined as those having "a substantial or significant portion" of their stock in trade in materials which are "distinguished or characterized by an emphasis on matter depicting, describing or relating to 'Specific Sexual Activities' or 'Specific Anatomical Areas'". These terms are each described in specific detail. Plaintiffs do not point out just what is vague about the above language. The words "distinguished" or "distinguishing" are frequently used in statutes relating to ballots. See, 12A Words and Phrases "Distinguished Ballot", "Distinguishing Mark". The word "characterized" has not, so far as the Court can determine, had similar judicial construction. However, "characteristic" or "characteristic

of" appear in various workmen's compensation statutes in which an injury must be characteristic of a business of the employer in order to be compensable as an occupational disease. E. g., Carter v. International Detrola Corp., 328 Mich. 367, 43 N.W.2d 890 (1950). The word causes no problem in such a statute nor should it here. See also, Lever Bros. Co. v. Procter & Gamble Mfg. Co., 49 F. Supp. 443 (D.C.Md., 1943). Similarly, the word "substantial" as used in the definition of Adult Book Store is not so indefinite as to render the Ordinance void and unenforceable. That term has been construed as having an ascertainable meaning in numerous statutory schemes. See, e. g., Busch v. Service Plastics, Inc., 261 F.Supp. 136, 141 (N.D. Ohio 1966); Roop v. Richardson, 324 F. Supp. 1130 (W.D.Va.1971); State ex rel. Saveland Park Holding Corp. v. Wieland, 269 Wis. 262, 69 N.W.2d 217, 224.

██ Plaintiffs claim that the Ordinances are unconstitutional because the waiver provisions are vague and overbroad and improperly delegate authority to the City Plan Commission. Plaintiffs urge that, if they meet all of the conditions for waiver, the City Plan Commission need not waive the prohibition. The Ordinances may be construed, however, so that the word "may", in the provision that if certain conditions are met the City Plan Commission "may" waive the location prohibitions, is mandatory. The Michigan Supreme Court has not construed these Ordinances nor has any Michigan Court construed these waiver provisions. However, it is a sound rule of construction that statutes or ordinances should be construed so as to be valid and constitutional if this can be done. This Court believes that the Michigan court will construe the word "may" to mean "shall" in the waiver provisions of these Ordinances. In the early case of McBrian v. City of Grand Rapids, 56 Mich. 95, 22 N.W. 206 (1885), a statute provided that the Board of Public Works should vote for sealed proposals and "may" contract with the lowest reasonable bidder. The

Michigan Supreme Court construed the word "may" as if it meant "shall". In Smith v. City Commission, 281 Mich. 235, 274 N.W. 776 (1937), the Michigan Supreme Court quoted, with approval, from *Corpus Juris*, saying:

"A mandatory construction will usually be given to the word 'may' where public interests are concerned, and the public or third persons have a claim *de jure* that the power conferred should be exercised, or whenever something is directed to be done for the sake of justice or the public good; but never for the purpose of creating a right." 59 C.J. pp. 1082–1085. [281 Mich. at p. 243, 274 N.W. at p. 779]

Plaintiffs conceded that the word "may" is frequently construed as mandatory but point to the fact that the present Ordinance elsewhere uses the word "shall". However, where, as here, specific standards are set up under which the waiver "may" be made, it is fair construction that the waiver must be granted if all of the conditions are met.

■ The State's right to require that particular businesses be located at specified distances to one another has been approved in a number of zoning cases. O'Connor et al. v. Board of Zoning Appeals, 140 Conn. 65, 98 A.2d 515; Glackman v. City of Miami Beach, Fla., 51 So.2d 294.

■ Nor is there any due process or any other constitutional violation in requiring 51 per cent of adjacent property owners to consent to a regulated use before permitting waiver. This question was before the United States Supreme Court in Thomas Cusack Co. v. City of Chicago, 242 U.S. 526, 37 S.Ct. 190, 61 L.Ed. 472 (1917). The City of Chicago, by ordinance, prohibited erection of billboards in any block in which one-half of the buildings were used exclusively for residence purposes without first obtaining the consent in writing of owners of a majority of the frontage of property on both sides of the street. The plaintiffs there claimed that the ordinance was invalid because it delegated legislative power to the property owners. The Court held that the ordinance was a reasonable exercise of the State's police power since:

. . ., much evidence was introduced upon the trial of the case, from which the Supreme Court finds that fires had been started in the accumulation of combustible material which gathered about such billboards; that offensive and unsanitary accumulations are habitually found about them, and that they afford a convenient concealment and shield for immoral practices, and for loiterers and criminals. [242 U.S. at p. 529, 37 S.Ct. at p. 191]

These factors were:

. . . sufficient to convincingly show the propriety of putting billboards, as distinguished from buildings and fences in a class by themselves . . . and to justify the prohibition against their erection in [a residential section of a city] in the interest of safety, morality and decency of the community. [242 U.S. at pp. 529–530, 37 S.Ct. at p. 191]

With respect to the waiver provisions, the United States Supreme Court stated:

The plaintiff in error cannot be injured, but obviously may be benefited by this provision, for without it the prohibition of the erection of such billboards in such residence sections is absolute. He who is not injured by the operation of a law or ordinance cannot be said to be deprived by it of either constitutional right or of property . . . .. To this we may add that such a reference to a neighborhood of the propriety of having carried on within it trades or occupations, which are properly the subject of regulation in the exercise of the police power, is not uncommon in laws which have been sustained against every possible claim of unconstitutionality, such as the right to maintain saloons, Swift v. People, 162 Ill. 534, 44 N.E. 528, and as to the location of garages, People v. Ericsson,

263 Ill. 368, 105 N.E. 315. Such treatment is plainly applicable to offensive structures. [242 U.S. at p. 530, 37 S.Ct. 191]

The Court distinguished the case where the establishment of the standards is given to property owners as in Eubank v. Richmond, 226 U.S. 137, 33 S.Ct. 76, 57 L.Ed. 156 (1912). It said:

A sufficient distinction between the ordinance there considered and the one at bar is plain. The former left the establishment of the building line untouched until the lot owners should act and then made the street committee the mere automatic register of that action and gave to it the effect of law. The ordinance in the case at bar absolutely prohibits the erection of any billboards in the blocks designated, but permits this prohibition to be modified with the consent of the persons who are to be most affected by such modification. The one ordinance permits two-thirds of the lot owners to impose restrictions upon the other property in the block, while the other permits one-half of the lot owners to remove a restriction from the other property owners. This is not a delegation of legislative power, but is, as we have seen, a familiar provision affecting the enforcement of laws and ordinances. [242 U.S. at p. 531, 37 S.Ct. at p. 192]

The requirement of consent to a waiver by a percentage of the adjoining property owners is not a device unique to the instant Ordinance. It is relatively common in zoning or licensing of deleterious businesses. People v. Gottlieb, 337 Mich. 276, 59 N.W.2d 289 (1935) (a used-car business); Cady v. City of Detroit, 289 Mich. 499, 286 N.W. 805 (1939), (a trailer camp).

■ Plaintiffs assert that the different treatment afforded adult theatres and bookstores, as opposed to theatres and bookstores generally, denies them the equal protection of the law. The equal protection clause, of course, does not require that all persons or all businesses be treated the same. "Sometimes the grossest discrimination can lie in treating things that are different as though they were exactly alike . . . .". Jenness v. Fortson, 403 U.S. 431, 442, 91 S.Ct. 1970, 1976, 29 L.Ed.2d 554 (1971). What is required is that the differing treatment be properly justified.

■ Because the Ordinances distinguish adult theatres and bookstores from ordinary theatres and bookstores on the basis of the content of their respective wares, the classification is one which restrains conduct protected by the First Amendment. See Interstate Circuit, Inc. v. Dallas, 390 U.S. 676, 88 S.Ct. 1298, 20 L.Ed.2d 225 (1968). The appropriate standard for reviewing the classification, therefore, is a test of close scrutiny. Harper v. Virginia Board of Elections, 383 U.S. 663, 670, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); NAACP v. Button, 371 U.S. 415, 438, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). Under this test, the validity of the classification depends on whether it is necessary to further a compelling State interest.

■ The compelling State interest which the Defendants point to as justifying the restrictions on locations of adult theatres and bookstores is the preservation of neighborhoods, upon which adult establishments have been found to have a destructive impact. The affidavit of Dr. Mel Ravitz clearly establishes that the prohibition of more than one regulated use within 1000 feet is necessary to promote that interest. This provision therefore does not offend the equal protection clause.

■ However, no arguments are advanced by Defendants as to how the prohibition of the regulated uses within 500 feet of a single dwelling or rooming unit furthers the legitimate interest the City has in preserving a residential area or neighborhood. Indeed, where only a single dwelling or rooming unit is involved, we fail to see how the prohibition of the Ordinance affords any protection whatsoever to a neighborhood or residential

area.[1] We must weigh this imperceptible benefit to the City's stated interest against the severe impact imposed by the Ordinance on the Plaintiffs. No area of the City is specifically set aside or designated for the regulated uses. There are few, if any, locations other than industrial areas and the downtown commercial area of Detroit where there is not a single dwelling or living unit within 500 feet. Thus, the effect of the restriction is an almost total ban on uses conceded by the Defendants to be lawful. While such an extreme effect might not render the restriction invalid under the equal protection clause if the City had demonstrated that its compelling interest was promoted thereby, no such showing has here been made. We conclude that the 500-foot restriction is not necessary to promote any expressed compelling State interest and is therefore invalid under the equal protection clause.

Plaintiffs' principal attack upon the Ordinances is their effect on First Amendment rights. Defendants respond that the Ordinances do not limit or restrict in any way what may be shown in licensed adult theatres or sold in adult bookstores. The nature of the material is of concern only as it relates to whether the location is to be regulated under the Ordinances. The Ordinances do not affect the operation of existing establishments but only the location of new ones. There are myriad locations in the City of Detroit which must be over 1000 feet from existing regulated establishments. This burden on First Amendment rights is slight.

■ The Ordinances in the instant case prevent certain conduct, namely the operation of certain theatres and bookstores. In doing so, they also, of course, have the effect of circumscribing speech. There may be, however, some regulation even of "pure speech". Even the press, like any other business, can be regulated on business and economic matters. See Associated Press v. United States, 326 U.S. 1, 65 S.Ct. 1416, 89 L.Ed. 2013, in which the Associated Press was held accountable for violations of the antitrust laws. In the same tenor are cases upholding the application of wage and hour laws and other labor laws to employers and employees of newspapers or other enterprises protected by the First Amendment. Where there is a sufficiently important governmental interest in regulating the non-speech element of conduct or of a business, incidental regulations on First Amendment freedoms may be justified. Thus, the United States Supreme Court has upheld the authority of governmental units to regulate picketing, Shuttlesworth v. Birmingham, 394 U.S. 147, 89 S.Ct. 935, 22 L. Ed.2d 162 (1969); the activities of lobbyists, United States v. Harriss, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954); the operation of sound trucks, Kovacs v. Cooper, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949); activities near a school, Grayned v. Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

The standards or criteria which must be met to justify governmental regulation where speech and non-speech elements are combined in the same course of conduct are set forth in United States v. O'Brien, *supra*, where the Court said:

> This Court has held that when "speech" and "nonspeech" elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms. To characterize the quality of the governmental interest which must appear, the Court has employed a variety of descriptive terms: compelling; substantial; subordinating; paramount; cogent; strong. Whatever imprecision inheres in these terms, we think it clear that a government regulation is sufficiently justified if it is within the constitutional

---

1. In this respect, the instant case differs from those such as *Cady* when at least 50 per cent of the defined area was residential.

power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. [391 U.S. at pp. 376–377, 88 S.Ct. at p. 1679]

█ Applying those standards to the instant case, the power to license and zone businesses and prohibit their location in certain areas is clearly within the constitutional power of the City. The government interest, i.e. the preservation and stabilization of neighborhoods in the City of Detroit, is unrelated to the suppression of free expression. First Amendment rights are indirectly related, but only in the sense that they cannot be freely exercised in specific locations. Plaintiffs would not contend that they are entitled to operate a theatre or bookstore, which are commercial businesses, in a residentially zoned area; nor could they claim the right to put on a performance for profit in a public street. Admittedly the regulation here is more restrictive, but it is of the same character.

█ The City of Detroit has a substantial governmental interest in protecting and maintaining the character of residential neighborhoods. This interest is furthered by the prohibition against more than one regulated use within 1000 feet of one another. As stated above, in connection with analysis of the Ordinances under the equal protection clause, the City's interest is not furthered by the prohibition of a regulated use within 500 feet of a *single* dwelling or rooming unit. Similarly, while the restriction on First Amendment freedoms, in the case of the 1000-foot prohibition, is no greater than is essential to the furtherance of a legitimate governmental interest in preserving and stabilizing neighborhoods, the same cannot be said of the 500-foot prohibition. In prohibiting regulated uses within 500 feet of a single dwelling or living unit, the Ordinance imposes a greater incidental restriction on First Amendment freedoms than is essential to preserve and stabilize residential neighborhoods.

For the foregoing reasons, those portions of the Ordinances which relate to the prohibition against two or more regulated uses within 1000 feet are declared to be valid; those portions which prohibit such uses within 500 feet of a dwelling unit are declared invalid.

Appropriate declaratory judgments may be presented.