CITY OF DETROIT v NORTOWN THEATRE, INC

Docket No. 56311. Submitted March 8, 1982, at Detroit.—Decided May 20, 1982. Leave to appeal applied for.

The City of Detroit brought an action against Nortown Theatre, Inc., and its owners and operators, alleging that the defendants were operating an adult motion picture theater in violation of a city ordinance. The case was held in abeyance pending the outcome of an action in federal court which had been brought previously by the defendants against the city, challenging the validity of the ordinance. The ordinance ultimately was upheld by the United States Supreme Court, *Young v American Mini Theatres, Inc,* 427 US 50 (1976). The present case was then activated, with the defendants offering as an affirmative defense that the ordinance was unconstitutional. The Wayne Circuit Court, Charles Kaufman, J., found that the defendants were operating an adult theater without the permit required by the ordinance and that the defendants were barred by the federal court adjudication from challenging the validity of the ordinance. Defendants were enjoined from operating the theater without a permit, and defendants appeal. *Held:*

All of the requirements for application of res judicata were satisfied in this action. The issues involved herein are the same as those adjudicated in the federal courts. The parties are the same, the cause of action is the same, and the doctrine of mutuality is satisfied. Furthermore, some provisions of the ordinance which the defendants are now challenging could have been challenged in the federal court action but were not. Litigation of such issues is barred by res judicata, as well as relitigation of those issues which were litigated in the federal courts. The defendants are barred from relitigating the issues in this case, and the trial court properly found in favor of the plaintiff.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1] 46 Am Jur 2d, Judgments §§ 394, 404.
[2] 46 Am Jur 2d, Judgments §§ 397, 398.
[3] 46 Am Jur 2d, Judgments § 417.
[4] 46 Am Jur 2d, Judgments § 410.

1. LIMITATION OF ACTIONS — RES JUDICATA.

Res judicata bars a subsequent suit between the same parties as were involved in a prior suit or their privies where the same cause of action is raised in the subsequent suit and where the facts or evidence essential to the maintenance of both actions are identical.

2. ESTOPPEL — COLLATERAL ESTOPPEL — ISSUES LITIGATED.

Collateral estoppel bars the relitigation of issues previously decided in a prior action where the parties to the second action are the same; where the second suit is based on a different cause of action the bar is conclusive only as to issues actually litigated in the first suit.

3. LIMITATION OF ACTIONS — RES JUDICATA — ISSUES NOT LITIGATED.

Res judicata bars the relitigation not only of issues upon which the court was required by the parties to form an opinion and judgment but also to every point which properly belonged to the litigation and which the parties, exercising reasonable diligence, might have brought forward at the time.

4. LIMITATION OF ACTIONS — RES JUDICATA.

The test for determining whether a second suit is for the same cause of action as an earlier one, for purposes of application of res judicata, is whether the same facts or evidence would sustain both actions.

*Sylvester Delaney,* Deputy Corporation Counsel, and *James C. Zeman* and *Patricia Irving-Cwick,* Assistants Corporation Counsel, for plaintiff.

*Taylor & Rubin, P.C.,* for defendant.

Before: D. C. RILEY, P.J., and R. B. BURNS and S. EVERETT,* JJ.

R. B. BURNS, J. Defendants appeal from the issuance of a permanent injunction enjoining an adult motion picture theater, Nortown Theatre in Detroit, from operating without a permit, required

---

* Circuit judge, sitting on the Court of Appeals by assignment.

by Detroit Ordinance 390-G, as amended by 742-G, § 63.0600. Defendants appeal from the injunction.

The parties were involved in litigation several times before this action was pursued. Prior to the commencement of the instant action, in November, 1972, the City of Detroit added amendment No. 742-G to the Detroit Zoning Ordinance. The amendment, among other things, defined an "adult motion picture theater"[1] and classified it as a "regulated use" under § 66.0000 of the zoning ordinance.[2] Nortown Theatre, which had just bought a premises with the intention of converting it into an adult theater, questioned the validity of the ordinance and commenced an action in the United States District Court for the Eastern District of Michigan.

In March, 1973, Nortown Theatre, as plaintiff, challenged the ordinance under the First, Fifth and Fourteenth Amendments to the United States Constitution. Specifically, it challenged § 66.0103,

---

[1] "Adult Motion Picture Theater

"An enclosed building with a capacity of 50 or more persons used for presenting material distinguished or characterized by an emphasis on matter depicting, describing or relating to 'Specified Sexual Activities' or 'Specified Anatomical Areas' (as defined below), for observation by patrons therein."

[2] "66.0000 Regulated Uses

"In the development and execution of this Ordinance, it is recognized that there are some uses which, because of their very nature, are recognized as having serious objectionable operational characteristics, particularly when several of them are concentrated under certain circumstances thereby having a deleterious effect upon the adjacent areas. Special regulation of these uses is necessary to insure that these adverse effects will not contribute to the blighting or downgrading of the surrounding neighborhood. These special regulations are itemized in this section. The primary control or regulation is for the purpose of preventing a concentration of these uses in any one area (i.e., not more than two such uses within one thousand feet of each other which would create such adverse effects). Uses subject to these controls are as follows:

"Adult

"Adult Book Store

"Adult Motion Picture Theater."

which prohibited locating an adult theater within 1,000 feet of another regulated use or within 500 feet of a residential dwelling. The waiver provision contained in § 66.0101 was challenged. Also, the plaintiff claimed the provision of the ordinance which defines "adult theater" was vague.

In *Nortown Theatre, Inc v Gribbs,* 373 F Supp 363 (ED Mich, 1974), the court upheld the ordinance requirement that, absent a waiver, adult theaters may not be located within 1,000 feet of other regulated uses, but struck down the portion that prohibited a regulated use within 500 feet of a residential dwelling. Where only a single dwelling or rooming unit was involved, the court failed to see how the prohibition of the ordinance afforded any protection to a neighborhood. In response to the decision, the City of Detroit, on May 2, 1974, adopted ordinance No. 891-G, to amend the provision declared unconstitutional. The amendment, pursuant to the federal court decision, now provided that a theater could not be located within 500 feet of a residentially zoned *district* without having obtained a waiver pursuant to § 66.0101.

In October, 1974, plaintiff in the instant action, City of Detroit, brought suit against Nortown Theatre for operating as an adult movie picture theater in violation of ordinance No. 742-G of the Detroit Zoning Ordinance. This action was held in abeyance in the Wayne County Circuit Court while the decision in *Nortown Theatre, Inc v Gribbs, supra,* was appealed to the Sixth Circuit Court of Appeals. The case was consolidated with another one. In *American Mini Theatres, Inc v Gribbs,* 518 F2d 1014 (CA 6, 1975), the court further struck down the 1,000-foot provision of ordinance No. 742-G, previously upheld by the district court.

The case was appealed to the United States Supreme Court. On June 24, 1976, the Supreme Court reversed the Sixth Circuit Court's opinion and reinstated the district court's opinion. *Young v American Mini Theatres, Inc,* 427 US 50; 96 S Ct 2440; 49 L Ed 2d 310 (1976).

After the litigation in the federal court system was completed, the instant case was activated. Plaintiff's motion for a summary judgment based on the doctrine of res judicata and collateral estoppel was denied. The case went to trial. The plaintiff's complaint alleged that defendants were operating a theater without a permit as required by § 63.0600, and that the theater was within 1,000 feet of two other businesses designated as regulated uses and within 500 feet of a residentially zoned district. The defendants had not been granted a waiver under § 66.0101. The defendants offered the affirmative defense that the ordinance was unconstitutional. The court found that the defendants were operating an adult theater without the required permit, contrary to § 63.0600 of the ordinance and that the defendants were barred by the prior adjudication in the federal court system from challenging the validity of ordinance 390-G, as amended by 742-G.

Several issues are raised on appeal. However, we need only address one issue raised, the issue of res judicata. Plaintiff argues that since the validity of the zoning ordinance was litigated extensively in the federal court system, the doctrines of res judicata or collateral estoppel bar the defendants from maintaining this action. Defendants counter that the doctrines of res judicata and collateral estoppel are not applicable here because the cause of action and the issues presently before the Court differ from those litigated in the federal court action.

Specifically, defendants argue that only the narrow issue of whether or not the zoning ordinance, on its face, was repugnant to the First and Fourteenth Amendments to the United States Constitution was presented to the Supreme Court. Here, categorizing the issue primarily as whether the defendants are operating an adult motion picture theater without securing a waiver or building permit, pursuant to § 63.0600 and § 66.0101, respectively, defendants would have us hold that neither res judicata nor collateral estoppel precludes this action.

The principles of res judicata and collateral estoppel are distinct. The elements necessary to satisfy the doctrines differ. *Braxton v Litchalk,* 55 Mich App 708, 717-718; 223 NW2d 316 (1974), adeptly highlighted the differences between the principles:

> "[T]he doctrine of res judicata is applicable to a second suit involving the same cause of action as that raised in the first suit, and will bar the relitigation of issues which *actually were or might have been presented before the court in the first action.* As noted in *Topps-Toeller, Inc v Lansing,* 47 Mich App 720, 726-727; 209 NW2d 843 (1973), *lv den* 390 Mich 788 (1973), res judicata bars a subsequent suit between the same parties or their privies when the same cause of action is raised in a subsequent suit, and when the facts or evidence essential to the maintenance of both actions are identical. On the other hand, collateral estoppel will bar the relitigation of issues previously decided in the first action when the parties to the second action are the same; where the second suit is a different cause of action, the bar is conclusive only as to issues actually litigated in the first suit." (Emphasis added.)

First, we start with an analysis of the concept of res judicata, the broader of the two doctrines, to

determine if this action is barred as the judge below, upon the completion of the trial, ruled. It is well-established in Michigan that the doctrine of res judicata has broad application. *Gose v Monroe Auto Equipment Co,* 409 Mich 147; 294 NW2d 165 (1980). A judgment is considered to be a determination on the merits, and thereby triggers the doctrine of res judicata upon relitigation, even if the action was resolved by a summary or default judgment. See *Braxton v Litchalk, supra.* Therefore, though the action in federal court stemmed from a summary judgment, the doctrine of res judicata still may apply.

The scope of a judgment on the merits is expansive for purposes of res judicata. Points which could have been raised in the first trial are considered res judicata for purposes of the second action. In discussing this aspect of res judicata, the Supreme Court stated in *Gursten v Kenney,* 375 Mich 330, 335; 134 NW2d 764 (1965):

"The correct rule is found in *Henderson v Henderson,* 3 Hare 100, 115 (67 Eng Rep 313), and is quoted in Michigan decisions from *Harrington v Huff & Mitchell Co,* 155 Mich 139, 142 [118 NW 924 (1908)], to *Shank v Castle,* 357 Mich 290, 295 [98 NW2d 579 (1959)]:

" 'The plea of *res judicata* applies, except in special cases, not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time.' "

Therefore, if defendant in this action merely could have raised, in the federal court litigation, the exceptions taken to the ordinance in the state forum, we must find that res judicata bars them from again resorting to the courts for redress.

The identical parties are involved in this action, albeit they have switched the roles of plaintiff and defendant since the federal litigation. The fact that parties have reversed roles in subsequent suits, in the past, has not foiled the application of res judicata. Under the circumstances here, the requirement that the subsequent suit must be between the same parties before invoking the doctrine of res judicata is satisfied. See *Leslie v Mollica,* 236 Mich 610; 211 NW 267 (1926); *Ternes Steel Co v Ladney,* 364 Mich 614; 111 NW2d 859 (1961).

The more difficult aspect of res judicata is determining if the trials involve the same cause of action. In *Rose v Rose,* 10 Mich App 233, 236-237; 157 NW2d 16 (1968), this Court adopted the following guidelines:

"The test for determining identity of claims is set forth in 30A Am Jur, Judgments, § 365:

" 'In the application of the doctrine of *res judicata,* if it is doubtful whether a second action is for the same cause of action as the first, the test generally applied is to consider the identity of facts essential to their maintenance, or whether the same evidence would sustain both. If the same facts or evidence would sustain both, the two actions are considered the same within the rule that the judgment in the former is a bar to the subsequent action. If, however, the two actions rest upon different states of facts, or if different proofs would be required to sustain the two actions, a judgment in one is no bar to the maintenance of the other.' "

See, also, *Mazzola v Vineyard Homes, Inc,* 54 Mich App 608; 221 NW2d 406 (1974).

This Court also confronts the doctrine of mutuality in considering if the trial judge properly ruled this action was precluded by res judicata. In essence, to meet the requirement of mutuality, the

court must be convinced that the parties who assert the doctrine of res judicata would have been bound by the prior judgment if it had been to their disadvantage. *Howell v Vito's Trucking & Excavating Co,* 386 Mich 37; 191 NW2d 313 (1971). *People v Babcock,* 38 Mich App 336; 196 NW2d 489 (1972). Here, the City of Detroit, which asserts the doctrine of res judicata, has established that it was bound by the federal court determination. The city took action to alter the provision of the zoning ordinance which the United States Supreme Court ruled unconstitutional. A review of the action taken by the city satisfies us that "mutuality" exists here.

In order to determine if the remaining elements of res judicata are present, the federal court decisions and the record of the trial below must be scrutinized.

In the sequel of federal court decisions, *Nortown Theatre, Inc v Gribbs, supra,* 365, considered the parties' motions for summary judgment, and characterized the issues before the Court as follows:

"The Plaintiffs in each case assert these city Ordinances violate their Constitutional rights under the First and Fourteenth Amendments of the Federal Constitution because their language is so vague as to deny due process of law; because they fail to establish procedural safeguards; because they invade the area of protection guaranteed by the First Amendment; and because they deprive Plaintiffs of equal protection of the law afforded to other theatre operators and bookstores. Plaintiffs seek declaratory and injunctive relief."

The court, in the text of the opinion, set forth § 66.0101 of the ordinance. The definition of what constituted an adult theater specifically was discussed, as were the waiver provisions of the ordinance. The court held that the ordinance did not

violate the Due Process Clause. However, the statute was found to restrain conduct protected by the First Amendment. The court explored whether the classification was necessary to further a compelling state interest. The restriction that an adult theater could not be located within 500 feet of a residential dwelling was struck down as being in violation of the Equal Protection Clause and defendants' First Amendment rights.

When the decision was appealed to the sixth circuit, it was again asserted in *American Mini Theatres, Inc v Gribbs, supra,* that the ordinance was challenged under the First Amendment and the Equal Protection and Due Process Clauses of the Constitution. The court in its opinion reproduced verbatim the definition of what constituted an adult motion picture theater. The court then went on to find:

"The plaintiffs-appellants are lessees and operators of 'adult' motion picture theatres in the City of Detroit which are directly affected by the two ordinances in question." 518 F2d 1014, 1017.

The court concluded that the two ordinances were unconstitutional since they violated defendant's First Amendment rights.

Finally, the United States Supreme Court heard the case. Prior to its decision on the merits, the Court observed:

"As they did in the District Court, respondents contend (1) that the ordinances are so vague that they violate the Due Process Clause of the Fourteenth Amendment; (2) that they are invalid under the First Amendment as prior restraints on protected communication; and (3) that the classification of theaters on the basis of the content of their exhibitions violates the Equal Protection Clause of the Fourteenth Amendment.

We consider their arguments in that order." 427 US 50, 58.

Like the sixth circuit, the Supreme Court found Nortown operated an adult movie theater. The Supreme Court stated:

"The application of the ordinances to respondents is plain; even if there is some area of uncertainty about their application in other situations, we agree with the District Court that respondents' due process argument must be rejected." *Id., 61.*

The Court denied Nortown's standing to attack the ordinance for overbreadth under the First Amendment because it was not persuaded that the zoning ordinance would have a significant deterrent effect on the exhibition of the films. However, in a discussion of the First Amendment issues, the Supreme Court concluded:

"The mere fact that the commercial exploitation of material protected by the First Amendment is subject to zoning and other licensing requirements is not a sufficient reason for invalidating these ordinances." *Id., 62.*

The Court reversed the circuit court opinion and reaffirmed the decision of the district court.

A comparison between the instant action and the federal court proceedings reveals that there an action for declaratory judgment was brought by the theater to have zoning ordinance 742-G declared unconstitutional. The remedy sought in this suit, instead, is injunctive relief against the theater, which is said to be operating in violation of ordinance 742-G. Here, defendants attack § 94.0300 of the ordinance. Section 94.0300 provides, in part:

"94.0300 Permitted with Approval Uses

"The following uses, and uses accessory thereto, shall be permitted by the Commission, or Council if specified, and subject to compliance with the provisions and standards as set forth in Article VI, Section 65.0000 and to all conditions hereinafter listed.

"Adult

"Adult Book Stores as regulated by Section 66.0000.

"Adult Motion Picture Theater as regulated by Section 65.0000."

Section 66.0000, referred to in § 94.0300, provides:

"66.0000 Regulated Uses.

"In the development and execution of this Ordinance, it is recognized that there are some uses which, because of their very nature, are recognized as having serious objectionable operational characteristics, particularly when several of them are concentrated under certain circumstances thereby having a deleterious effect upon the adjacent areas. Special regulation of these uses is necessary to insure that these adverse effects will not contribute to the blighting or downgrading of the surrounding neighborhood. These special regulations are itemized in this section. The primary control or regulation is for the purpose of preventing a concentration of these uses in any one area (i.e., not more than two such uses within one thousand feet of each other which would create such adverse effects). Uses subject to these controls are as follows:

"Adult

"Adult Book Store

"Adult Motion Picture Theater."

Along with contesting these provisions the defendants argued that the ordinance was void for overbreadth. At the hearing on the motion for summary judgment in the lower court, conducted prior to trial, the constitutionality of the statute also was raised. During the trial testimony was

received and movies were viewed to establish that Nortown was an adult movie theater.

Mainly, the thrust of the action below was to challenge the validity of ordinance provisions §§ 66.0101 and 66.0103 as they applied to Nortown Theatre at the time the complaint originally was filed back in 1974. During trial the waiver provisions of § 66.0100 were discussed. The real argument boiled down to whether or not Nortown Theatre was precluded by the 1,000-foot regulation from operating an adult theater absent a waiver or obtaining approval for operation from the city council. This echoes the same cause of action that ran the gamut in the federal court system.

The provision for a permit with approval uses, § 94.0300, relies on § 66.0000 for guidance when an adult motion picture theater seeks permission to operate. The same evidence presented in the federal litigation surrounding the provisions found in § 66.0000 was reasserted in the trial below.

The United States Supreme Court specifically looked at the definition of an adult movie theater and concluded that defendants were operating such a theater. Therefore, the nature of the movies shown at Nortown and the definition of an adult movie theater now cannot be attacked by defendants for this would condone a duplication of efforts.

The defendants again are trying to escape complying with the statute. This was the purpose of the federal litigation: to determine if the ordinance was constitutional and thereby binding on the defendants. In *Novi v Mobile Homes Parks of America, Inc,* 45 Mich App 176; 206 NW2d 238 (1973), the owners of land zoned as an agricultural district filed an action against the city to declare the zoning ordinance unconstitutional. The Court

held the ordinance unconstitutional. However, the ordinance was changed prior to the entry of the judgment, and reclassified the district as "country home". The owners sold the land and the new owners developed a trailer park. The city sought to enjoin the construction of the trailer park but an accelerated judgment was granted in favor of defendants. Novi moved for a rehearing on the basis that, since the "country home" ordinance was not presented in the first case, res judicata was not applicable. This Court held:

"The unappealed judgment of February 17, 1971 in the *Matthews v City of Novi* litigation was res judicata of all issues in the present action arising from permitted uses that were the same under both classifications." *Id.,* 180.

Were the defendants subject to the ordinances? The United States Supreme Court answered yes. Yet, the same provisions were contested again. Pursuant to *Novi,* these provisions should not have been relitigated.

Thus far we have focused on the aspects of the defendants' action that actually were litigated in both the federal and state forums. However, the sweep of res judicata also extends to points which the parties, exercising reasonable diligence, could have brought up at the first trial. In *Rogoski v Muskegon,* 550 F2d 1075 (CA6, 1977), plaintiff sought to recover additional compensation for property that already had been the subject of an eminent domain proceeding in the Michigan state court. The plaintiff argued in federal court that his property had been constructively taken five years prior to the condemnation proceeding in the state court. However, this issue could have been decided in the state court proceeding but was not raised.

The court concluded that the doctrine of res judicata correctly was invoked by the district court.

The complaint here was filed in state court against the defendants in October, 1974. This case was held in abeyance pending the resolution of the litigation in the federal court system. Defendants had notice of the ordinance violations cited in the complaint. There was no reason for defendants to refrain from challenging all the provisions of the zoning ordinance in the course of the federal litigation. The litigation this time stemmed from defendants' persistence in ignoring the provisions of the ordinance, despite the prior adjudications.

Under these circumstances we find defendants are subjecting plaintiff to repeated litigation. This is precisely the type of conduct the doctrine of res judicata was designed to avoid. *Rogoski v Muskegon, supra.* In *Perry & Derrick Co, Inc v King,* 24 Mich App 616, 620; 180 NW2d 483 (1970), this Court stated:

"In *Knowlton v City of Port Huron,* 355 Mich 448, 456 [94 NW2d 824] (1959), the Supreme Court stated:

" 'This claimed right to "sue till something gives" cannot be sound law. There must be an end of litigation, and out of sheer self-defense and considerations of broad public policy our courts cannot gladly permit repeated litigation of the same old question under the circumstances appearing in this case.' "

We agree.

We conclude that the doctrine of res judicata precludes the relitigation of this action. Therefore, we need not rely on the doctrine of collateral estoppel as the foundation for barring this action. Collateral estoppel is the narrower of the two doctrines invoked when a second suit involves a different cause of action from the first suit but

similar issues were presented in both cases. Here, we find both suits involve the same cause of action. We agree that defendants would not be precluded under the doctrine of collateral estoppel from attacking the validity of § 94.0300 of ordinance 742-G, since that issue was not actually litigated in the federal forum. However, that determination has no bearing on our finding.

Affirmed.