*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

C-SPINE ORTHOPEDICS, PLLC,

Plaintiff-Appellant,

v

PROGRESSIVE MICHIGAN INSURANCE
COMPANY,

Defendant-Appellee.

and

LM GENERAL INSURANCE COMPANY,

Defendant.

FOR PUBLICATION
April 6, 2023
9:00 a.m.

No. 359681[1]
Macomb Circuit Court
LC No. 2019-003741-NF

Before: GADOLA, P.J., and BORRELLO and HOOD, JJ.

HOOD, J.

Plaintiff, C-Spine Orthopedics, PLLC (C-Spine), appeals as of right an order of the trial court granting summary disposition under MCR 2.116(C)(7) in favor of defendant, Progressive Michigan Insurance Company (Progressive), on the basis of res judicata in this no-fault action to recover personal protection insurance (PIP) benefits. For the reasons stated below, we reverse.

## I. BACKGROUND

This case arises out of a claim for PIP benefits stemming from injuries Benjamin Moore suffered in an April 2019 automobile accident. Moore lived with his wife in Detroit. He drove a Chrysler Sebring that was insured through Progressive. Moore's wife usually drove another

---

[1] This case is being submitted with the appeal in Docket No. 359689.

-1-

vehicle that she insured through defendant, LM General Insurance Company (LM).[2]  But, sometimes, she would drive Moore's Sebring.  On Moore's insurance application with Progressive, he did not list his wife as either a resident of their home or a driver of the vehicle.  On April 18, 2019, Moore amended his insurance policy to include a Chrysler PT Cruiser.  But, like his earlier insurance application, the application to amend the policy to add the PT Cruiser did not list his wife as a resident of their home or a driver.  On April 23, 2019, Moore was injured in an accident while driving his PT Cruiser, when an unknown driver rear-ended him in a hit-and-run.

C-Spine treated Moore's injuries.  Its clinicians performed various procedures, including shoulder surgery, rotator cuff repair, and a lumbar spine fusion.  Instead of paying the medical bills and seeking reimbursement from Progressive, Moore assigned C-Spine his right to collect PIP benefits in the amount of his bills for treatment, which spanned from May 8, 2019, to August 25, 2021, totaling $481,621.32.  The assignment was dated August 25, 2021.[3]

On September 10, 2019, C-Spine filed suit against Progressive to recover on the assigned claim in Macomb Circuit Court.  On April 2, 2020, while C-Spine's suit was pending, Moore sued Progressive and LM for no-fault and uninsured and underinsured motorist (UM/UIM) benefits relating to other costs arising from the crash.  Moore's suit was also in Macomb Circuit Court, but before a different trial judge, and is the subject of the appeal in Docket No. 359689.

In Moore's suit, the defendants[4] moved for summary disposition, arguing that Moore had committed a material misrepresentation by omitting mention of his wife on his insurance application.  The Macomb Circuit Court found that Moore had committed fraud in the inducement, rescinded his policy, and dismissed his claims with prejudice, on November 2, 2021.

Progressive then filed a motion for summary disposition in the instant suit under MCR 2.116(C)(7), (C)(8), and (C)(10), arguing that C-Spine's claims were barred by res judicata and collateral estoppel because of the decision in Moore's suit holding that the policy was rescinded.  The trial court granted summary disposition on the ground that C-Spine's claims were barred by res judicata.  This appeal followed.

## II.  STANDARD OF REVIEW

We review de novo the application of a legal doctrine, such as res judicata and collateral estoppel.  *Garrett v Washington*, 314 Mich App 436, 440-441; 886 NW2d 762 (2016).  Summary disposition based on res judicata falls under MCR 2.116(C)(7).  See *RDM Holdings, LTD v Continental Plastics Co*, 281 Mich App 678, 687; 762 NW2d 529 (2008).  "When reviewing a motion under MCR 2.116(C)(7), a reviewing court must consider all affidavits, pleadings, and

---

[2] The parties stipulated to dismissing all claims against LM General Insurance Company, who is not participating in this appeal.

[3] Moore also signed an assignment of benefits on August 16, 2019.  The August 25, 2021 assignment is the only assignment relevant to the issues on appeal, however.

[4] The defendants in Docket No. 359689 are Progressive Michigan Insurance Company and Progressive Marathon Insurance Company.

other documentary evidence submitted by the parties and construe the pleadings and evidence in favor of the nonmoving party." *Anzaldua v Neogen Corp*, 292 Mich App 626, 629; 808 NW2d 804 (2011).

## III. LAW AND ANALYSIS

C-Spine argues that the trial court erred in applying res judicata to bar its claims because it, as the assignee, is not bound by a judgment obtained by the predecessor in interest after the assignment. In other words, res judicata and collateral estoppel do not apply for lack of privity. Progressive, however, argues that the earlier judgment's order granting rescission voided the policy *ab initio*, negating any effect of the assignments. We agree with C-Spine. The trial court erred by dismissing on res judicata grounds and collateral estoppel grounds because there was not privity between the parties. *Mecosta Co Med Ctr v Metro Group Prop & Cas Ins Co*, 509 Mich 276, 282-283, 290; 983 NW2d 401 (2022). Rescission does not change this.

### A. RES JUDICATA AND COLLATERAL ESTOPPEL

Res judicata and collateral estoppel are legal doctrines that prevent relitigation of a claim or issue. Courts use the doctrine of res judicata to prevent multiple suits litigating the same cause of action. *Washington v Sinai Hosp of Greater Detroit*, 478 Mich 412, 418; 733 NW2d 755 (2007). It bars a subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the claims in the second case were, or could have been, resolved in the first case. *Adair v Michigan*, 470 Mich 105, 121; 680 NW2d 386 (2004). "Michigan courts have broadly applied the doctrine of res judicata. They have barred, not only claims already litigated, but every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Dart v Dart*, 460 Mich 573, 586-587; 597 NW2d 82 (1999) (citations omitted). Specifically:

> In Michigan, the doctrine of res judicata applies, except in special cases, in a subsequent action between the same parties and not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time. [*Pierson Sand & Gravel, Inc v Keeler Brass Co*, 460 Mich 372, 380; 596 NW2d 153 (1999) (quotation marks and citation omitted).]

"If the same facts or evidence would sustain both, the two actions are the same for the purpose of res judicata." *Peterson Novelties, Inc v Berkley*, 259 Mich App 1, 11; 672 NW2d 351 (2003) (citations omitted). Res judicata applies to issues decided through a grant of summary disposition. *Detroit v Nortown Theatre, Inc*, 116 Mich App 386, 392; 323 NW2d 411 (1982).[5]

---

[5] Although *Nortown Theatre* is not strictly binding pursuant to MCR 7.215(J)(1), because it was issued before November 1, 1990, as a published opinion, it nevertheless "has precedential effect under the rule of stare decisis" pursuant to MCR 7.215(C)(2).

Whereas res judicata involves preclusion of an entire claim, collateral estoppel focuses on preclusion of a specific issue. *Mecosta Co Med Ctr*, 509 Mich at 282-283. The three elements of collateral estoppel are similar: (1) a question of fact essential to the judgment was actually litigated and determined by a valid, final judgment, (2) the parties or privies had a full and fair opportunity to litigate the issue, and (3) there must be mutuality of estoppel (meaning both parties are bound by the judgment). *Id*. at 283 (citations omitted). "One of the critical factors in applying collateral estoppel involves the determination of whether the respective litigants were parties or privy to a party to an action in which a valid judgment has been rendered." *Id*. (quotation marks, citation, and alterations omitted). Accordingly, "both res judicata and collateral estoppel apply only when the parties in the subsequent action were parties or privies of parties to the original action." *Id*.

## B. RES JUDICATA AND COLLATERAL ESTOPPEL DO NOT BAR AN ASSIGNEE'S CLAIMS FOR LACK OF PRIVITY

C-Spine, relying on our Supreme Court's holding in *Mecosta Co Med Ctr*, argues that the trial court erred in granting summary disposition on res judicata and collateral estoppel grounds because there was no privity between the assignor and assignee at the time of prior judgment. See *Mecosta Co Med Ctr*, 509 Mich at 282-283. We agree.

In this case, the application of res judicata and collateral estoppel turn on the question of privity. The question of privity turns on the assignment. *Mecosta Co Med Ctr*, 509 Mich at 283-285. The remaining prongs of res judicata (i.e, decision on the merits; claim was raised or could have been raised), and collateral estoppel (i.e, essential fact question was actually litigated; mutuality of estoppel), are not in dispute. See *id*.

"An assignee stands in the shoes of the assignor and acquires the same rights as the assignor possessed." *First of America Bank v Thompson*, 217 Mich App 581, 587; 552 NW2d 516 (1996) (citation omitted). Assignees also are "subject to the same defenses" as the assignor. *Burkhardt v Bailey*, 260 Mich App 636, 653; 680 NW2d 453 (2004) (citations omitted). Our Supreme Court has held:

> [t]he rule that an assignee of a nonnegotiable chose takes subject to defenses means, of course, defenses existing at the time of the assignment. After assignment, the assignor loses all control over the chose, and cannot bind the assignee, by estoppel or otherwise. Nor can prior acts of the assignor, which have not ripened into rights in others at the time of the assignment, bind an assignee without notice. [*Saginaw Fin Corp v Detroit Lubricator Co*, 256 Mich 441, 443-444; 240 NW 44 (1932) (citations omitted).]

In other words, prior acts of an assignor, which have not ripened into rights in others at the time of the assignment, cannot bind an assignee without notice. See *id*. That appears to be precisely what happened to the assignee here, who, through the grant of summary disposition was subject to the latent equity of rescission that was granted after its assignment.

Both sides acknowledge that, on the surface, our Supreme Court's decision in *Mecosta Co Med Ctr* indicates that the trial court erred in granting summary disposition on res judicata and collateral estoppel grounds. See *Mecosta Co Med Ctr*, 509 Mich at 290. We agree. See *id*.

In *Mecosta Co Med Ctr*, on facts similar to this case, our Supreme Court considered whether res judicata and collateral estoppel applied against an assignee in cases where the assignor had received a judgment after the assignment, and concluded that they did not. There, the insured was injured in a car accident and assigned his rights to seek PIP benefits before suing for other benefits. *Id*. at 279-280. While his suit was pending, the assignees also sued to recover benefits, in a separate action in a different county's circuit court. *Id*. at 280. In the insured-assignor's case, the trial court found that he personally had not maintained insurance coverage with one of the defendants, and that he did not live with the policyholders of the other. *Id*. at 280-281. "[T]he trial court held that [the insured] had not properly insured the vehicle and was therefore not entitled to any benefits." *Id*. at 279. The trial court granted summary disposition to both of the defendants under MCR 2.116(C)(10), and dismissed the claims with prejudice. *Id*. at 281. After that judgment entered, the defendants in the assignees' case filed a motion for summary disposition under MCR 2.116(C)(7) and (C)(10), arguing that res judicata and collateral estoppel barred their claims because of the judgment in the insured's lawsuit. *Id*. The trial court granted summary disposition on those grounds. *Id*.

Our Supreme Court held that res judicata and collateral estoppel did not bar the assignees' claims because they "were neither parties to the earlier suit nor privies with respect to the subsequently entered judgment . . . ." *Mecosta Co Med Ctr*, 509 Mich at 279-280. The Court observed that the plaintiffs-assignees would be "bound by the judgment only if they were in privity with [the insured] when the earlier judgment against [the insured] was entered." *Id*. at 279. " 'To be in privity is to be so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert.' " *Id*. at 283, quoting *Adair*, 470 Mich at 122. "In its broadest sense, privity has been defined as mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right." *Id*. at 283-284 (quotation marks and citation omitted). The Court acknowledged that in an assignment, "the assignee succeeds to the rights of the assignor, thus meeting the general definition of privity." *Id*. at 284 (citation omitted). "But the mere succession of rights to the same property or interest does not, by itself, give rise to privity with regard to subsequent actions by and against the assignor." *Id*. (citation omitted). The Court reasoned that privity was not tied to the fact that persons are interested in the same question or proving or disproving the same facts; rather, "the binding effect of the adjudication flows from the fact that when the successor acquires an interest in the right it is then affected by the adjudication in the hands of the former owner." *Id*. at 284-285 (quotation marks, citations, and brackets omitted). "In other words, the assignee succeeds to those rights subject to any earlier adjudication involving the assignor that defined those rights." *Id*. at 285. "When the litigation involving the assignor occurs after the assignment, the rights could not yet have been affected by the litigation at the time they were transferred to the assignee." *Id*. Importantly, "a judgment entered after the assignment does not bind the assignee because the assignee is not in privity with the assignor with respect to that judgment." *Id*. The Supreme Court concluded, therefore, that the plaintiffs-assignees were not in privity with their assignor, the insured, with respect to the post-assignment judgment. *Id*. at 290. "Therefore, the plaintiff assignees cannot be bound by that judgment under the doctrines of res judicata or collateral estoppel." *Id*.

*Mecosta Co Med Ctr* thus clarifies that assignees are not in privity with assignors in connection with judgments affecting the assignors entered after the assignment. *Mecosta Co Med*

*Ctr*, 509 Mich at 290. Like *Mecosta Co Med Ctr*, it is undisputed here that the judgment in Moore's case was entered after the assignment. Under *Mecosta Co Med Ctr*, res judicata and collateral estoppel cannot bar C-Spine's claims. Progressive appears to acknowledge this. But it argues that the rescission of the subject policy in this case distinguishes it from *Mecosta Co Med Ctr*, where the finding was simply of no coverage. *Id*. at 279-280. As described below, we disagree.

## C. RESCISSION DOES NOT CHANGE THE *MECOSTA* ANALYSIS

Progressive argues that this case falls outside of *Mecosta*'s otherwise applicable framework because the prior judgment granted rescission, which nullified the assignment because it rendered the insurance contract void *ab initio*. We disagree. Rescission is an equitable doctrine. See *Bazzi v Sentinel Ins Co*, 502 Mich 390, 409; 919 NW2d 20 (2018). Its operation is not automatic. *Bazzi*, 502 Mich at 411. The fact that the prior judgment involved rescission does not alter the analysis under *Mecosta*.

Rescission is an equitable remedy. *Bazzi*, 502 Mich at 409. It allows a court to abrogate a contract, such as an insurance policy, and restore the parties to the relative positions that they would have occupied if the contract had never been made. *Id*.; see *Pioneer State Mut Ins Co v Wright*, 331 Mich App 396, 409-410; 952 NW2d 586 (2020) (*Wright*) (stating the same); see also *Bazzi*, 502 Mich at 399-407 (recognizing the abrogation of the innocent third-party rule which previously barred an insurer from rescinding an insurance policy because of a material misrepresentation in an application for no-fault insurance where there was a claim involving an innocent third party). "When a plaintiff is seeking rescission, 'the trial court must balance the equities to determine whether the plaintiff is entitled to the relief [that] he or she seeks.' " *Bazzi*, 502 Mich at 410, quoting *Johnson v QFD, Inc*, 292 Mich App 359, 370 n 3; 807 NW2d 719 (2011). But, "rescission does not function by automatic operation of the law." *Bazzi*, 502 Mich at 411. Our Supreme Court has long held that "[a]n assignment is not subject to latent equities not known to the assignee." *Saginaw Fin Corp*, 256 Mich at 444. "Just as the intervening interest of an innocent third party does not altogether bar rescission as an equitable remedy, neither does fraud in the application for insurance imbue an insurer with an absolute right to rescission of the policy with respect to third parties." *Bazzi*, 502 Mich at 411. "[C]learly rescission should not be granted in cases where the result thus obtained would be unjust or inequitable." *Amster v Stratton*, 259 Mich 683, 686; 244 NW 201 (1932).

Here, Progressive argues that because Moore's prior judgment granted rescission of the insurance contract, this Court should rely on its prior precedent in *TBCI, PC v State Farm Mut Auto Ins Co*, 289 Mich App 39; 795 NW2d 229 (2010), rather than *Mecosta*. We are not persuaded.

*Mecosta* stands for the basic principle that a party may not use the shield of res judicata or collateral estoppel against an assignee who received the assignment before the attendant judgment. *Mecosta Co Med Ctr*, 509 Mich at 279-280. The fact that the court in Moore's case granted the equitable remedy of rescission does not affect C-Spine's rights, because C-Spine was not involved in that case. It had no opportunity to argue against rescission in that litigation. A contrary position would allow an assignor to cut off an assignee's rights without the latter having any notice or opportunity to be heard. See *id*. at 281. Rescission does not change this.

Progressive's reliance on *TBCI* is misplaced.  In *TBCI*, the plaintiff, a medical provider, filed a claim against an auto insurer, seeking PIP benefits for treatments it provided to the insured following an automobile accident.  *TBCI*, 289 Mich App at 40-41.  There, the insured sued the defendant-insurer in a separate case in a different county.  *Id*. at 40.  The insured's case went to trial, and a jury found that his claim for attendant-care benefits was fraudulent, barring coverage for his claim under the exclusionary clause of his policy.  *Id*.  The provider filed a separate lawsuit while the insured's case was pending, alleging that the insurer-defendant breached the insurance policy and that its failure to pay the claim violated the no-fault act.  *Id*. at 41.  After judgment was entered in the insured's case, the insurer moved for summary disposition on res judicata grounds, arguing that once the jury found that the insured had committed fraud, there was no longer any coverage under the policy, so the provider's claim failed.  *Id*.  The trial court granted summary disposition and this Court affirmed.  *Id*. at 41, 43-44.  This Court, applying res judicata principles pre-*Mecosta*, reasoned that the plaintiff, "by seeking coverage under the policy, is now essentially standing in the shoes of [the insured]."  *Id*. at 44.  This Court held that such a position meant that there was "no question" that the provider was in privity with the insured.  *Id*.  *Mecosta Co Med Ctr* has overruled the privity analysis on which *TBCI* relied.  Compare *id*. with *Mecosta Co Med Ctr*, 509 Mich at 283-289.

*TBCI*, though involving a fraudulent claim, did not involve rescission.  It also did not involve an assignment.  *Mecosta Co Med Ctr* holds that an assignee will not be bound by unknown equities.  *Mecosta Co Med Ctr*, 509 Mich at 279-280, 284-285, 290.  The equitable remedy of rescission falls squarely within *Mecosta*'s framework.

Progressive correctly observes that rescission renders a contract void *ab initio*—as if it never existed.  But it ignores that rescission is not automatic.  See *Bazzi*, 502 Mich at 411.  It is an equitable doctrine that courts use relying on a legal fiction to restore the parties to the relative positions they would have occupied had the contract never been made, after balancing the equities.  See *Bazzi*, 502 Mich at 409; *Wright*, 331 Mich App at 409-410.  "When a plaintiff is seeking rescission, 'the trial court must balance the equities to determine whether the plaintiff is entitled to the relief he or she seeks.' "  *Bazzi* , 502 Mich at 410, quoting *Johnson*, 292 Mich App at 370 n 3.  The trial court in Moore's proceeding avoided this balancing by finding that Moore made the misrepresentation and therefore was not an innocent party.  That court was dealing with only Moore's claims, and did not consider C-Spine's interest when deciding that rescission was just and equitable.  See *Amster*, 259 Mich at 686.  Relying on rescission to circumvent *Mecosta Co Med Ctr* and apply res judicata (and collateral estoppel) to bar C-Spine's arguments against rescission would upend both of these doctrines.  In short, the fact that the prior judgment involved rescission does not take it out of *Mecosta Co Med Ctr*'s framework.

## IV.  CONCLUSION

For the reasons stated above, we reverse and remand for proceedings consistent with this opinion.  On remand, to comply with MCR 2.613(B), the trial court shall transfer this case to the trial judge that issued the order granting summary disposition in the companion case, *Benjamin Moore v Progressive Mich Ins Co, et al*, Macomb Circuit Court Case No. 2020-001299-NF, unless

that judge is absent or unable to act.  Once transferred, the trial court should consider whether consolidation is appropriate before proceeding with the mandate from this appeal.  We do not retain jurisdiction.

/s/ Noah P. Hood
/s/ Michael F. Gadola
/s/ Stephen L. Borrello